# In the United States Court of Appeals for the First Circuit

_____

**UNITED STATES OF AMERICA**,
*Appellee,*

v.

**HECLOUIS JOEL NIEVES-DÍAZ**,
*Defendant-Appellant.*

_____

On Appeal from the United States District Court
for the District of Puerto Rico
D. Ct. No. 20-CR-353-FAB-1
Hon. Francisco A. Besosa, U.S. District Judge

_____

## APPELLANT'S OPENING BRIEF

_____

**RACHEL BRILL**
Federal Public Defender
District of Puerto Rico

241 F.D. Roosevelt Ave.
San Juan, PR 00918
T. (787) 281-4922
F. (787) 281-4899
E. Celso_Perez@fd.org

**FRANCO L. PÉREZ-REDONDO**
Assistant Federal Public Defender
Supervisor, Appellate Unit

**CELSO JAVIER PÉREZ CARBALLO**
Assistant Federal Public Defender

Attorneys for Defendant-Appellant
**HECLOUIS JOEL NIEVES-DÍAZ**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................... III

REASONS WHY ORAL ARGUMENT SHOULD BE HEARD ............................VIII

APPELLANT'S OPENING BRIEF ......................................................................1

JURISDICTION...............................................................................................1

ISSUES PRESENTED ......................................................................................2

STATEMENT OF THE CASE..............................................................................3

    A.    Mr. Nieves's Offenses ...............................................................3

    B.    The District Court Sentences to 13 Months Above the Upper End of the Guidelines Range .......................................5

    C.    Mr. Nieves Successfully Appeals, and Lowers his Guidelines Sentencing Range ..................................................7

    D.    The District Court Resentences to 25 Months Above the Remanded Guidelines Range....................................................9

SUMMARY OF THE ARGUMENT ....................................................................15

STANDARDS OF REVIEW ............................................................................16

ARGUMENT..................................................................................................19

I.    The district court procedurally erred because it did not adequately explain or individualize its significant upward variance. ........................................................................................19

    A.    The district court did not adequately explain or individualize its reliance on the quantity of ammunition as a justification for its upward variance. ............................22

B.    The district court did not adequately explain or individualize its reliance on the community factors as a justification for its upward variance.....................................29

C.    The court misunderstood Mr. Nieves's criminal history, and that history alone could not justify a 25-month upward variance..................................................36

II.    The district court's sentence was substantively unreasonable because the court accepted a lower Guidelines range, yet provided for a greater, unexplained and illogical upward variance. .......................................................................37

A.    In 2021, all critical facts and arguments were before the court, the government sought only a mid-range sentence, and the court imposed only a 13-month variance. ............................................................40

B.    This Court's 2024 remand allowed the district court to vary upward if it either adopted a valid policy disagreement or justified its reasoning based on factual differences, but the district court did neither. .....................42

C.    On remand, the government introduced new arguments to insulate the sentence from review, but the district court refused them. ...............................................43

D.    Where the district court rejected all new upward variance arguments, only the original 13-month variance could plausibly stand. ............................44

III.    After two failed attempts at sentencing, this Court should remand to another judge.............................................46

CONCLUSION ........................................................................50

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

CASES                                                                  PAGE

*Kimbrough v. United States,*
    552 U.S. 85 (2007) .......................................................................... *passim*

*United States v. Álvarez-Núñez,*
    828 F.3d 52 (1st Cir. 2016) ............................................................ 39

*United States v. Arsenault,*
    833 F.3d 24 (1st Cir. 2016) ............................................................ 16

*United States v. Bermúdez-Meléndez,*
    827 F.3d 160 (1st Cir. 2016) .......................................................... 16

*United States v. Brown,*
    31 F.4th 39 (1st Cir. 2022) ...................................................... 28, 29

*United States v. Cali,*
    87 F.3d 571 (1st Cir. 1996) ............................................................ 43

*United States v. Carmona-Alomar,*
    109 F.4th 60 (1st Cir. 2024) .......................................................... 35

*United States v. Carrasquillo-Sánchez,*
    9 F.4th 56 (1st Cir. 2021) .................................................. 20, 21, 35

*United States v. Carrasquillo-Vilches,*
    33 F.4th 36 (1st Cir. 2022) ...................................................... 38, 46

*United States v. Clogston,*
    662 F.3d 588 (1st Cir. 2011) .................................................... 16, 38

*United States v. Colón-Cordero,*
    91 F.4th 41 (1st Cir. 2024) ................................... 21, 27, 32, 46, 47

*United States v. Colón-De Jesús,*
    85 F.4th 15 (1st Cir. 2023) ...................................................... 17

*United States v. Coombs,*
    857 F.3d 439 (1st Cir. 2017) ........................................... 17, 38

*United States v. Cotto-Negrón,*
    845 F.3d 434 (1st Cir. 2017) ........................................... 25, 31

*United States v. Crespo-Ríos,*
    787 F.3d 34 (1st Cir. 2015) ............................................. 38, 45

*United States v. De Jesús-Torres,*
    64 F.4th 33 (1st Cir. 2023) ...................................................... 17

*United States v. Del Valle-Rodríguez,*
    761 F.3d 171 (1st Cir. 2014) ................................................... 19

*United States v. Doe,*
    960 F.2d 221 (1st Cir. 1992) ................................................... 23

*United States v. Duarte,*
    246 F.3d 56 (1st Cir. 2001) ..................................................... 18

*United States v. Fernández-Jorge,*
    894 F.3d 36 (1st Cir. 2018) ..................................................... 33

*United States v. Flores-Machicote,*
    706 F.3d 16 (1st Cir. 2013) ............................................. 19, 21

*United States v. Flores-Nater,*
    62 F.4th 652 (1st Cir. 2023) .............................. 16, 38, 39, 44

*United States v. García-Pérez,*
    9 F.4th 48 (1st Cir. 2021) ................................... 20, 35, 39, 48

*United States v. King,*
    741 F.3d 305 (1st Cir.2014) ................................................... 38

*United States v. López-Felicie*,
   109 F.4th 51 (1st Cir. 2024) ...................................................... 17, 19, 20

*United States v. Martin*,
   520 F.3d 87 (1st Cir. 2008) .................................................... 19, 20, 38

*United States v. Martin*,
   749 F.3d 87 (1st Cir. 2014) ............................................................ 28

*United States v. Mendoza-Maisonet*,
   962 F.3d 1 (1st Cir. 2020) .............................................................. 16

*United States v. Montero-Montero*,
   817 F.3d 35 (1st Cir. 2016) ............................................................ 38

*United States v. Muñoz-Fontanez*,
   61 F.4th 212 (1st Cir. 2023) .................................................. 26, 47, 48

*United States v. Nieves-Díaz*,
   99 F.4th 1 (1st Cir. 2024) ...................................................... *passim*

*United States v. Ofray-Campos*,
   534 F.3d 1 (1st Cir. 2008) .............................................................. 20

*United States v. Ortiz-Rodríguez*,
   789 F.3d 15 (1st Cir. 2015) ............................................................ 20

*United States v. Ouellette*,
   985 F.3d 107 (1st Cir. 2021) ...................................................... 43, 44

*United States v. Polaco-Hance*,
   103 F.4th 95 (1st Cir. 2024) ...................................................... 20, 37

*United States v. Reyes-Correa*,
   81 F.4th 1 (1st Cir. 2023) ........................................................ 19, 20

*United States v. Reyes-Santiago,*
   804 F.3d 453 (1st Cir. 2015) ........................................ 39, 45

*United States v. Rivera-Berríos,*
   968 F.3d 130 (1st Cir. 2020) ............................... 21, 35, 45, 48

*United States v. Rivera-González,*
   776 F.3d 45 (1st Cir. 2015) ...................................... 21

*United States v. Rivera-Ruiz,*
   43 F.4th 172 (1st Cir. 2022) ..................................... 30

*United States v. Rivera-Santiago,*
   919 F.3d 82 (1st Cir. 2019) ..................................... 23

*United States v. Rodríguez,*
   525 F.3d 85 (1st Cir. 2008) ....................................... 9

*United States v. Rodríguez-Meléndez,*
   828 F.3d 35 (1st Cir. 2016) ..................................... 25

*United States v. Ruiz-Huertas,*
   792 F.3d 223 (1st Cir. 2015) .................................... 16

*United States v. Serrano-Berríos,*
   38 F.4th 246 (1st Cir. 2022) ................................... 43

*United States v. Sierra-Jiménez,*
   93 F.4th 565 (1st Cir. 2024) ................................... 16

*United States v. Vargas-Martínez,*
   15 F.4th 91 (1st Cir. 2021) .................................... 17

## STATUTES

18 U.S.C. § 922(g)(1).................................................. 3

18 U.S.C. § 922(o) ................................................................ 3

18 U.S.C. § 3231 ................................................................. 1

18 U.S.C. § 3553(c) .......................................................... 19

18 U.S.C. § 3742(a) ............................................................ 1

21 U.S.C. § 841 ................................................................. 34

21 U.S.C. § 841(a)(1) .................................................... 4, 30

28 U.S.C. § 1291 ................................................................ 1

28 U.S.C. § 2106 .............................................................. 46

## UNITED STATES SENTENCING GUIDELINES

U.S.S.G. § 2K2.1(a)(3)(A)(ii) ............................................. 5

U.S.S.G. § 2K2.1(a)(3)(B) ................................................... 5

U.S.S.G. § 2K2.1(b)(6) ................................................ 5, 7, 9

U.S.S.G. § 4A1.1(d) ............................................................ 9

## REASONS WHY ORAL ARGUMENT SHOULD BE HEARD

Mr. Nieves respectfully requests oral argument on the issues raised herein. Counsel submits that the issues on appeal are significant, and counsel's familiarity with the record and legal issues will substantially assist the Court in its resolution of this appeal.

# In the United States Court of Appeals for the First Circuit

—————————

**UNITED STATES OF AMERICA,**
*Appellee,*

v.

**HECLOUIS JOEL NIEVES-DÍAZ,**
*Defendant-Appellant.*

—————————

On Appeal from the United States District Court
for the District of Puerto Rico
D. Ct. No. 20-CR-353-FAB-1
Hon. Francisco A. Besosa, U.S. District Judge

———————————————————————————————

### APPELLANT'S OPENING BRIEF

———————————————————————————————

TO THE HONORABLE COURT:

The defendant-appellant, Heclouis Joel Nieves-Díaz ("Mr. Nieves"), represented by the Federal Public Defender for the District of Puerto Rico through undersigned counsel, respectfully states and prays:

## JURISDICTION

Mr. Nieves appeals from the district court's order resentencing him, following remand from this Court. AD1 (amended judgment).[1] Mr. Nieves filed a timely notice of appeal on August 28, 2024. A12.

The district court had original jurisdiction under 18 U.S.C. § 3231, providing exclusive jurisdiction over offenses against laws of the United States.

This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), authorizing appeals from all final decisions and sentences of the district courts of the United States.

Mr. Nieves is in government custody at the U.S. Penitentiary Hazelton. His term is set to expire on May 4, 2027.[2]

---

[1] Citations are as follows: Addendum ("AD__"); Appendix ("A__"); Sealed Supplemental Appendix ("SA__").

[2] *See* BOP Inmate Locator, *available at* https://www.bop.gov/inmateloc/ (search by Register No. 41031-069) (last checked March 24, 2025).

# Issues Presented

I. Whether the district court procedurally erred by failing to adequately explain and individualize its upwardly variant sentence on remand.

II. Whether—following a successful appeal and relying on the same record—it was substantively unreasonable for the district court to adopt a significantly greater upward variance in resentencing Mr. Nieves.

III. Whether this Court should remand this case to a different district court judge.

In 2021, Mr. Nieves pled guilty to three charges relating to the possession of ammunition, a firearm accessory, and controlled substances. The district court calculated a Guidelines Sentencing Range ("GSR") of 57 to 71 months—relying in part on an enhancement applied to individuals who use a firearm in connection with another offense. The district court sentenced Mr. Nieves to 84 months in prison—13 months above the high end of the GSR. Mr. Nieves successfully challenged the district court's use of the firearm enhancement and lowered his GSR to between 33 and 41 months. *United States v. Nieves-Díaz*, 99 F.4th 1 (1st Cir. 2024). On remand, reviewing the same sentencing record, the district court resentenced Mr. Nieves to 66 months in prison—25 months above the high end of the new GSR. Mr. Nieves appeals that decision.

### A. Mr. Nieves's Offenses

In 2021, Mr. Nieves pled guilty to three charges: One count of being a prohibited person in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). A64 (2021 judgment). One count of unlawfully possessing a machinegun in violation of 18 U.S.C. § 922(o), A64, specifically a so-called "chip" or "part designed … to convert a semiautomatic weapon into a machinegun," A198 (indictment); *see also Nieves-Díaz*, 99 F.4th at 4

(noting conversion devices are commonly known as "chip[s]"). One count of possessing with intent to distribute a mixture containing cocaine, in violation of 21 U.S.C. § 841(a)(1). A64; *see also* A197-A198 (indictment).

The underlying conduct took place in the fall of 2020, while Mr. Nieves was serving a term of supervised release for a prior sentence. SA35-SA37 (2021 presentence investigation report).[3] On October 13, 2020, Puerto Rico police agents executed an arrest warrant in an apartment in San Juan, and detained Mr. Nieves. SA35-SA36. Agents searched the residence and seized multiple rounds of ammunition, a chip, and small containers with marijuana and cocaine. SA36. The police found no guns or rifles at the scene. *See* A143-A144 (change of plea transcript describing conduct); SA35-SA37 (2021 presentence investigation report); SA8-SA10 (2024 presentence investigation report).

---

[3] At the time Mr. Nieves was serving a term of supervised release in Case No. 12-cr-426-FAB-35. SA40 (describing 2012 controlled substance conspiracy offense); A201 (judgment relating to 2012 offense); A206-A217 (plea agreement relating to same). This case was previously docketed as 12-cr-426-ADC-35 and 12-cr-426-JAF-35 but is currently docketed as 12-cr-426-FAB-35.

## B.    The District Court Sentences to 13 Months Above the Upper End of the Guidelines Range

The probation office's presentence investigation report ("PSR") calculated a GSR of 57 to 71 months, SA50, based on a total offense level of 23, SA39. The PSR reasoned that a base offense level of 22 applied to each offense, because the offenses involved a firearm within the meaning of U.S.S.G. § 2K2.1(a)(3)(A)(ii), and a prior controlled substance offense within the meaning of U.S.S.G. § 2K2.1(a)(3)(B). SA38-SA39. The PSR added a four-level enhancement based on U.S.S.G. § 2K2.1(b)(6), which applies where a defendant used or possessed a firearm or ammunition in connection with another felony offense. SA39. This adjusted offense level of 26 was reduced three levels for acceptance of responsibility, to a total offense level of 23. SA39.  Finally, the PSR applied a criminal-history category of III based on Mr. Nieves's prior offenses, SA39-SA43, thereby arriving at the 57 to 71 months range, SA50.

The government agreed with the PSR's calculation and advocated for a middle-of-the-Guidelines sentence of 66 months. A148 (sentencing memorandum); A95-A96 (sentencing transcript). The government reasoned this sentence was appropriate based in part on Mr. Nieves's "possess[ion] [of] distribution amounts of cocaine, a larg[e] [sic] amount

of ammunition and a machine conversion device." A156. It also cited "[c]ommunity-based factors," namely "the problem of gun violence in Puerto Rico." A157. Finally, it pointed to Mr. Nieves's criminal history, A156, and the likelihood he would recidivate, A159-A160.[4]

Mr. Nieves objected to the PSR's base offense level calculation, the four-level enhancement, and argued for a sentence of 37 months. A186 (sentencing memorandum); A95 (sentencing transcript). In addition to providing mitigation, A184, Mr. Nieves argued that his was "not a mine-run machine gun case" because there was no firearm involved, and the bullets and chip found in the apartment could not be used together with one another, thereby "pos[ing] no danger," A185. He also pointed out several errors in the PSR's characterization of his past criminal conduct. A91.

The district court overruled most of Mr. Nieves's objections and adopted the total offense level and GSR in the PSR, including the

_____

[4] The government also stressed that ammunition and conversion devices "are intended exclusively to be used in conjunction with a firearm to cause bodily injury and even death," A158, and that the "Court could reasonably infer that a firearm was present at the apartment in the not[-]so[-]distant [sic] past," A159.

relevant enhancements. A100. The court stated multiple factors justified an upward variance, including the quantity of drugs and ammunition seized, and the location of the drugs and ammunition seized. A101. It also cited Mr. Nieves's possession of the machinegun conversion device, and the dangerousness of machineguns. A102; *see also* SA30-SA31 (2021 statement of reasons, identifying similar grounds for the variance). Finally, it referenced Mr. Nieves's prior criminal record, and multiple violations of supervised release. A101. The court then handed down an 84-month sentence—13 months above the high end of the GSR—on all three counts. A102-A103 (hearing transcript); A65 (2021 judgment).

### C. Mr. Nieves Successfully Appeals, and Lowers his Guidelines Sentencing Range

Mr. Nieves successfully appealed the district court's application of the § 2K2.1(b)(6) four-level enhancement to his calculated GSR. *Nieves-Díaz*, 99 F.4th at 9.[5] The district court had "applied the enhancement solely based on the ammunition found at the San Juan apartment." *Id.*

_____

[5] This Court affirmed the district court's use of the base offense level, *Nieves-Díaz*, 99 F.4th at 7, and the district court's 18-month sentence on the revocation of supervised release, *id.* at 12-13. Neither of these issues are on appeal.

at 7. But as this Court noted, this enhancement applies only where ammunition potentially facilitated the commission of an offense. *Id.* at 8. And here the record only showed "that the ammunition in question was found in a Ziplock bag atop a tall kitchen cabinet, close to the ceiling of the apartment … where the arrest occurred." *Id.* at 9. "[T]he photographs of the apartment in the record reveal[ed] that the ammunition was not being displayed in a manner that might induce fear in observers, and the District Court made no factual findings to the contrary." *Id.* Thus this Court concluded that the government could not "meet its burden to show that the evidence in the record makes it more likely than not that the ammunition in this case had the required potentially facilitative effect." *Id.* at 8.

The panel further noted that the district court's upwardly variant sentences did not mention *Kimbrough v. United States*, 552 U.S. 85 (2007), or any policy disagreements with the Sentencing Guidelines. *Nieves-Díaz*, 99 F.4th at 10 n.3 (observing that the district court did not mention *Kimbrough* at sentencing and left the corresponding box in the statement of reasons unchecked). Thus, the Court cautioned that "insofar as the District Court does not intend to support a decision to vary upward

even in part under *Kimbrough* based on a policy disagreement with the Guidelines, it must provide, on remand, a case-specific explanation for the upward variance, if any." *Id.* (citing *United States v. Rodríguez*, 525 F.3d 85, 109 (1st Cir. 2008)).

This Court accordingly vacated the district court's "sentences and remand[ed] for resentencing not inconsistent with [its] opinion." *Id.* at 10.

### D. The District Court Resentences to 25 Months Above the Remanded Guidelines Range

On remand, the amended PSR recalculated the GSR. First, finding the § 2K2.1(b)(6) four-level enhancement no longer applied, the PSR calculated the new total offense level as 19. SA12. Second, due to an amendment to the Sentencing Guidelines,[6] the PSR calculated Mr.

---

[6] Mr. Nieves originally received three criminal history points based on prior criminal offenses, and two criminal history points because his offense was committed while on a period of supervised release, under U.S.S.G. § 4A1.1(d). SA43. This total criminal history score of 5 resulted in a criminal history category III. SA43. Amendment 821 to the Guidelines modified § 4A1.1(d), such that Mr. Nieves no longer received two criminal history points on resentencing. *See* A36 (government remand memorandum); SA15 (2024 PSR no longer applying points). Mr. Nieves's criminal history category at resentencing was therefore II. SA15.

Nieves's criminal history category as II, SA15, lowering the GSR from between 57 and 71 months to between 33 and 41 months, *compare* SA50 (2021 PSR) *with* SA23 (2024 PSR).

The government agreed the PSR calculated the correct new GSR but again requested a 66-month sentence—now a 25-month upward variance above the high-end of the Guidelines range. A37 (remand memorandum); AD21 (sentencing transcript). On remand, the government advanced two new threshold arguments, namely that: (1) The district court should adopt a *Kimbrough*-type policy argument. A34-A35 (sentencing memorandum describing a "void" in the Guidelines); AD19-AD21 (arguing same before the court). (2) The "Court should indicate on the record that it would impose that sentence regardless of the correct Guidelines calculation, which can always be challenged at a later point." A35.

Then, the government justified its upward variance repeating similar arguments to those it had used to advocate for a mid-range recommendation in 2021. It averred that: (1) The nature and circumstances of the offense warranted a higher sentence. A39. Citing no record evidence, the government theorized that:

Though the police did not find an operable firearm at the time of the search, there are really only two possibilities explaining [the] [sic] machinegun conversion device and over [149][7] rounds of ammunition in the same small apartment from which Nieves was trafficking narcotics. Either he had firearms (plural—the conversion device and ammunition were different caliber) to put the conversion device and ammo into or they were slated for sale.

A39. The government thus invited the district court to use the amount of ammunition in support "of a stiffer sentence." A40. (2) "Puerto Rican gun violence" and the island's "homicide rate" were community considerations also requiring a higher sentence. A41. (3) Mr. Nieves's criminal history, and the fact he reoffended several months after his release from incarceration warranted an upward variance. A37-A38.

Mr. Nieves meanwhile advocated for a low-end 33-month sentence.[8] A13 (resentencing memorandum). Mr. Nieves: (1) Explained that the

_____

[7] The government's motion erroneously states there were "over 300" rounds of ammunition. A39. The prosecutor acknowledged this was incorrect at sentencing. AD18.

[8] Mr. Nieves argued for a lower GSR based on a then-pending writ of certiorari. A13 n.1 (arguing for a range of 27 to 33 months based on an offense level of 17); *see also* AD10 (counsel arguing for a lower GSR at resentencing and referring to a range of 30 to 37 months—an apparent oversight as the Sentencing Table of the U.S. Sentencing Commission Guidelines Manual establishes a range of 27 to 33 for an offense level of 17). The GSR on remand is not at issue on appeal.

chip and ammunition in this case could cause no harm on their own, therefore taking this out of the "mine-run machine gun case." A14. He further disputed the government's "conjecture" concerning its firearms possession-or-sale theory, because "nothing in the record establishes this." A25; *see also* AD12 (challenging same). (2) Disputed the government's reliance on community factors because Mr. Nieves had "no history of violent crimes." A27. (3) Emphasized that going from a 13-month upward variance to a 25-month upward variance was seemingly "random" and unwarranted by the record. AD15.

The district court agreed with the GSR calculation of 33 to 41 months, AD31, but nevertheless sentenced Mr. Nieves to 66 months, AD35. The court gave three reasons for its upward variance, tracking the government's sentencing memorandum: (1) "[T]he amount of ammunition that Mr. Nieves possessed[.]" AD34. (2) "[T]he prevalence of gun violence in the [Puerto Rico] community," AD34, as evidenced by the island's "homicide rate," AD35. (3) Mr. Nieves's "prior offenses" and his "criminal history." AD33.[9]

---

[9] The district court also checked the box for "Policy Disagreement with the Guidelines" in the statement of reasons. SA3 (citing *Kimbrough v.*

Defense counsel objected to the sentence as "procedurally and substantively unreasonable." AD36. Counsel argued that: (1) The court's analysis concerning the amount of ammunition was deficient because the court failed to consider "the context of … Mr. Nieves'[s] case." AD37 (noting there was "no firearm present" and the amount of ammunition was "still being considered in a vacuum"). (2) The court's analysis of community concerns was similarly deficient because Mr. Nieves had "no history of violence," AD40, and "no gun was at play in this case," AD41. (3) The court provided a deficient analysis of Mr. Nieves's criminal history, which consisted mainly of "one prior conviction from 12 years ago" and several revocations of supervised release for which Mr. Nieves had already served time. AD39. (4) Relying on "the same information" presented at the original sentencing, the court went from a 13-month upward variance to a 25-month upward variance, which was unreasonable. AD36.

_____

*United States*, 552 U.S. 85 (2007)). However, the district court did not mention *Kimbrough* or any policy disagreements at sentencing. *See* AD8-AD45. Nor did it explain on the nature of this supposed policy disagreement in its statement of reasons. *See* SA4. In fact, at the resentencing hearing, the district court explicitly stated it did not "even have to get into [the policy argument]." AD24.

The court listened to counsel's objections, "disagree[d]" with defense counsel's analysis, and concluded the hearing. AD43-AD45. This appeal followed. A12.

## SUMMARY OF THE ARGUMENT

In 2021, Mr. Nieves was convicted of possessing a machinegun conversion device, a number of loose bullets inside a Ziplock bag, and controlled substances. Officers found no firearms on Mr. Nieves's person or his vicinity. Yet fixating on the dangerousness of machineguns, the district court imposed a sentence 13 months above the GSR. Mr. Nieves successfully appealed that decision and his GSR dropped considerably. Despite this, on remand in 2024, the district court doubled down. Relying on the same record, and on arguments similar to those it had already considered in 2021, the court imposed a sentence 25 months above the GSR. This sentence was procedurally and substantively flawed, lacking in explanation, specificity, and coherence. Because the district court already had multiple opportunities to get it right, this Court should reverse and remand Mr. Nieves's case for resentencing before a different district court judge.

This Court reviews sentencing errors under a "bifurcated framework." *United States v. Flores-Nater*, 62 F.4th 652, 655 (1st Cir. 2023). The Court "first determine[s] whether the sentence imposed is procedurally reasonable and then determine[s] whether it is substantively reasonable." *Id.* (quoting *United States v. Clogston*, 662 F.3d 588, 590 (1st Cir. 2011)).

"Preserved challenges to the procedural reasonableness of a sentence are reviewed under 'a multifaceted abuse-of-discretion standard.'" *United States v. Sierra-Jiménez*, 93 F.4th 565, 569 (1st Cir. 2024) (quoting *United States v. Mendoza-Maisonet*, 962 F.3d 1, 20 (1st Cir. 2020)). Under this standard, the Court "assay[s] the [district] court's factfinding for clear error, and evaluate[s] its judgment calls for abuse of discretion.'" *United States v. Arsenault*, 833 F.3d 24, 28 (1st Cir. 2016) (quoting *United States v. Ruiz-Huertas*, 792 F.3d 223, 226 (1st Cir. 2015)). District courts procedurally err when they "fail[] to give an adequate explanation for the sentence imposed and ... fail[] to make an individualized assessment of [a defendant's] history and characteristics." *United States v. Bermúdez-Meléndez*, 827 F.3d 160, 163 (1st Cir. 2016).

This Court also "review[s] preserved challenges to the substantive reasonableness of a sentence for abuse of discretion." *United States v. Colón-De Jesús*, 85 F.4th 15, 26 (1st Cir. 2023) (citing *United States v. Vargas-Martínez*, 15 F.4th 91, 102 (1st Cir. 2021)). "When evaluating the substantive reasonableness of a challenged sentence, 'the key inquiry is whether the sentencing court has articulated a plausible rationale and reached a defensible result.'" *United States v. De Jesús-Torres*, 64 F.4th 33, 40 (1st Cir. 2023) (quoting *United States v. Coombs*, 857 F.3d 439, 452 (1st Cir. 2017)).

Where "arguments challenging the procedural and substantive reasonableness of [a] sentence were not preserved in the district court, [this Court] review[s] them on appeal only for plain error." *United States v. López-Felicie*, 109 F.4th 51, 57 (1st Cir. 2024) (citation omitted). To prevail under plain error review, an appellant must show: "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the [appellant's] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." *United States v. Chéveres-Morales*, 83 F.4th 34, 42-43 (1st

Cir. 2023) (quoting *United States v. Duarte*, 246 F.3d 56, 60 (1st Cir. 2001)).

**I. The district court procedurally erred because it did not adequately explain or individualize its significant upward variance.**

Section 3553(c) of Title 18 requires district courts to "state in open court the reasons for its imposition of the particular sentence." "Where, as here, a court imposes a sentence above the GSR, it must justify the upward variance." *United States v. Del Valle-Rodríguez*, 761 F.3d 171, 176 (1st Cir. 2014) (citation omitted). "To justify an upward variance, a court must explain why it deems the defendant's case different from the norm and/or why it disagrees with the applicable advice from the Guidelines." *López-Felicie*, 109 F.4th at 58 (citing *Kimbrough v. United States*, 552 U.S. 85, 110-11 (2007); *United States v. Reyes-Correa*, 81 F.4th 1, 10 (1st Cir. 2023)).

A court's reasons for a variance "should typically be rooted either in the nature and circumstances of the offense or the characteristics of the offender." *United States v. Flores-Machicote*, 706 F.3d 16, 21 (1st Cir. 2013) (quoting *United States v. Martin*, 520 F.3d 87, 91 (1st Cir. 2008)). "In such a situation, the factors deemed relevant by the sentencing court 'must add up to a plausible rationale' for the sentence imposed and 'must justify a variance of the magnitude in question.'" *Id.* (quoting *Martin*, 520

F.3d at 91). "The more a court deviates from the guideline range, 'the more compelling the sentencing court's justification must be.'" *López-Felicie*, 109 F. 4th at 58 (quoting *Reyes-Correa*, 81 F.4th at 10). To evaluate a district court's justification, this Court considers the district court's "contemporaneous oral explanation of the sentence, its near-contemporaneous written statement of reasons, and what fairly can be gleaned by comparing what was argued by the parties or proffered in the [PSR] with what the sentencing court ultimately did." *United States v. Polaco-Hance*, 103 F.4th 95, 104 (1st Cir. 2024) (quoting *Martin*, 520 F.3d at 93).

Moreover, "defendants are entitled to a 'sufficiently particularized [and] compelling' explanation when they are subject to a significant upward variance." *United States v. García-Pérez*, 9 F.4th 48, 54 (1st Cir. 2021) (quoting *United States v. Ofray-Campos*, 534 F.3d 1, 43 (1st Cir. 2008)). District courts must assess sentencing factors in "case-specific terms." *United States v. Carrasquillo-Sánchez*, 9 F.4th 56, 60-61 (1st Cir. 2021) (quoting *United States v. Ortiz-Rodríguez*, 789 F.3d 15, 19 (1st Cir. 2015)). And a "court's appraisal of community-based considerations does not relieve its obligation to ground its sentencing determination in

individual factors related to the offender and the offense." *United States v. Rivera-Berríos*, 968 F.3d 130, 136 (1st Cir. 2020) (quoting *United States v. Rivera-González*, 776 F.3d 45, 50 (1st Cir. 2015)). "It is possible for a sentencing judge to focus too much on the community and too little on the individual and, thus, impose a sentence that cannot withstand the test of procedural reasonableness." *Flores-Machicote*, 706 F.3d at 24.

Here, the district court's significant 25-month variance required a compelling, case-specific justification. *See United States v. Colón-Cordero*, 91 F.4th 41, 53 (1st Cir. 2024) ("as a practical matter, 9 months … would be readily understood as a significant time period"); *Carrasquillo-Sánchez*, 9 F.4th at 59 ("an upward variance of eighteen months from the applicable GSR of a prison sentence of up to thirty months … is a significant deviation"). Mr. Nieves's case was remanded to the district court following a successful appeal, and his GSR dropped from 57-71 months to 33-41 months. *Compare* SA50 (2021 PSR) *with* SA23 (2024 PSR). The district court's 66-month sentence on remand was twice as long as a sentence on the low end of Mr. Nieves's GSR, and 25 months above a high-end sentence.

Yet the district court's explanation was woefully inadequate. The court's reliance on the quantity of ammunition and community factors concerning violence in Puerto Rico, did not add up to a plausible, case-specific rationale justifying a variance of this magnitude. And to the extent the district court relied on Mr. Nieves's criminal history, it misunderstood that history, and that it failed to justify such a significant upward variance.

### A. The district court did not adequately explain or individualize its reliance on the quantity of ammunition as a justification for its upward variance.

The district court used the amount of ammunition as one of three justifications for its upward variance. AD33-AD35. The court noted that "the guideline range does not take into account the amount of ammunition that Mr. Nieves possessed, specifically 149 rounds." AD34; *see also* SA4 (statement of reasons). And it added that under this Court's case law it could "consider the quantity of ammunition when determining an appropriate sentence." A34. Notably, the court overlooked defense counsel's primary argument concerning the ammunition: that Mr. Nieves possessed no actual firearms, therefore the rounds posed no danger or risk of harm to anyone. *See* A27 (raising argument in resentencing

memorandum); AD11 (same, at resentencing hearing). The district court's analysis as to the ammunition was procedurally unreasonable for at least four reasons:

First—as counsel argued below—the rationale underlying the ammunition cases the district court relied on is roughly as follows: ammunition quantity may be an aggravating factor for an upward variance because more rounds of ammunition may represent a greater danger to society or other individuals. *See* AD36-AD37 (counsel distinguishing cases the court cited concerning quantity of ammunition based on the presence of firearms and risk of danger). Indeed, "[i]t is a foundational principle of the felon-in-possession statute that a felon's unlawful possession of firearms presents a danger to society." *United States v. Rivera-Santiago*, 919 F.3d 82, 86 (1st Cir. 2019) (citing *United States v. Doe*, 960 F.2d 221, 225 (1st Cir. 1992)). Thus, an upward variance is justified where the quantity of ammunition "present[s] a danger to [third parties] and society above and beyond a generic felon-in-possession case." *Id.* "But ammunition cannot -- on its own -- cause harm." *United States v. Nieves-Díaz*, 99 F.4th 1, 8 (1st Cir. 2024); *see also* AD11 (defense counsel arguing at sentencing that "[c]hips as well as

ammunition cannot cause harm by themselves"). Here, the district court pointed to nothing explaining why—on this record—the 149 rounds were dangerous, let alone any more dangerous than the generic felon-in-possession case.

Second, this Court already cautioned that the record here likely did not support a finding that the ammunition posed a danger justifying an upward variance. The Court noted that the government could not "meet its burden to show that the evidence … makes it more likely than not that the ammunition in this case" helped facilitate a crime. *Id.* at 8-9. This Court made clear that "[t]he record suffices to show only that the ammunition in question was found in a Ziplock bag atop a tall kitchen cabinet, close to the ceiling of the apartment in San Juan where the arrest occurred." *Id.* at 9. Moreover, "the photographs of the apartment in the record reveal[ed] that the ammunition was not being displayed in a manner that might induce fear in observers, and the District Court made no factual findings to the contrary." *Id.*

Like with the initial sentencing, on remand the district court made no findings concerning the ammunition, its dangerousness, or how it was displayed. *See* AD33-AD35. In fact, the district court misstated where the

ammunition was found, noting the rounds were "located on top of the kitchen's *counter*," AD32 (emphasis added), and not atop a "kitchen cabinet," *Nieves-Díaz*, 99 F.4th at 9; *see also* A153 (government photograph showing ammunition atop a kitchen cabinet, near the ceiling of the apartment). This clear error exacerbated the court's procedurally unreasonable analysis.[10] *See United States v. Cotto-Negrón*, 845 F.3d 434, 438-39 (1st Cir. 2017) (holding it was procedurally unreasonable for district court to apply an enhancement based on "clearly erroneous facts"). And despite defense counsel's insistence, the court did not explain how the nondangerous and nonthreatening bullets could justify the variance. *See* AD11-AD14 (defense counsel arguing the lack of gun and danger did not warrant an upward variance prior to sentencing). Thus, the district court violated the precept that "[w]hen imposing a significant variance, [the] court must make clear *which* specific facts of the case

---

[10] To the extent this Court finds counsel did not object to this specific error below, the error was plain because it was obvious, affected Mr. Nieves's substantial rights, and seriously impaired the integrity of the sentencing. *See United States v. Rodríguez-Meléndez*, 828 F.3d 35, 39-40 (1st Cir. 2016) (reliance on a "demonstrably wrong fact" was plain error).

motivated its decision and *why* those facts led to its decision." *United States v. Muñoz-Fontanez*, 61 F.4th 212, 215 (1st Cir. 2023) (emphases in original).

Third, the lack of danger was Mr. Nieves's principal argument concerning why the quantity of ammunition did not justify an upward variance. Mr. Nieves first raised the issue twice in his original sentencing proceedings in 2021. *See* A185 (sentencing memorandum arguing this was "not a mine-run machine gun case" because there "was no firearm involved and the bullets seized could not be used" to create a "potential for harm"); A93 (counsel arguing at sentencing that "the bullets seized could not be used" and therefore could not "represent the same danger that a typical machine gun case would represent"). He repeated this concern on remand at least three separate times. *See* A27 (resentencing memorandum arguing quantity of ammunition was irrelevant because the ammunition in this case could not "cause harm"); AD11-AD14 (arguing at resentencing that ammunition could not cause harm on its own); AD36-37 (same, raising the argument immediately after resentencing). This matters because while a sentencing court need not address every argument a defendant makes, it must engage with a

defendant's key arguments. *See Colón-Cordero*, 91 F.4th at 55. The district court did not do so here.

Finally, the district court's silence cast doubt on the basis of the upward variance, and whether the court endorsed the government's unfounded firearms possession-or-sale theory. The government speculated on remand that there were "really only two possibilities" explaining the ammunition and conversion device in the San Juan apartment—"[e]ither [Mr. Nieves] had firearms (plural—the conversion device and ammunition were different caliber) to put the conversion device and ammo into or they were slated for sale." A39.[11] Defense counsel called out this unsupported conjecture both in writing, A25, and orally at sentencing, AD12. Counsel explained that while Mr. Nieves had admitted to the elements of the offenses in this case, the government "adduced no evidence that the items … [actually] belonged to [Mr. Nieves] much less [that] he intended to use them." AD12; *see also* A144

_____

[11] The government invoked a variation of this argument at the original sentencing. *See* A158-A159 (stating that ammunition and conversion devices "are intended exclusively to be used in conjunction with a firearm to cause bodily injury and even death," and that the "Court could reasonably infer that a firearm was present at the apartment in the not[-]so[-]distant [sic] past").

(defense counsel stating at change of plea that "since this is straight plea, we are not conceding to the facts, only to the elements of the offense"). As defense counsel explained prior to resentencing:

> [T]he government assumes that the apartment where the arrest took place belonged to Mr. Nieves, but nothing in the record establishes this. No evidence connects him to any firearm. Nor is there any evidence that he introduced firearms into the scene of drug transactions. There is no record evidence to show that Mr. Nieves purposefully acquired the Glock chip and ammunition, used them, or even touched them.

A25. And the government did not dispute any of this, or point to anything in the record to bolster its speculative theory. A39.

Yet at resentencing, the court said nothing about the dangerousness of the ammunition, Mr. Nieves's use of it in connection with the instant offenses, or how the presence or absence of a firearm informed its decision to vary upward. If the court adopted the government's theory and found sub silentio that Mr. Nieves possessed or sold firearms—given the lack of record evidence here—this amounted to clear error. *See United States v. Brown*, 31 F.4th 39, 46 (1st Cir. 2022) (district court commits clear error where its decision is not "based on reasonable inferences drawn from adequately supported facts" (quoting *United States v. Martin*, 749 F.3d 87, 92 (1st Cir. 2014))). But even if the

court did not adopt this theory, its deafening silence on why the number of rounds mattered here was a procedurally unreasonable failure to adequately explain a significant upward variance.

### B. The district court did not adequately explain or individualize its reliance on the community factors as a justification for its upward variance.

The district court also justified its variance based on "the prevalence of gun violence in the community when Mr. Nieves committed his offense." AD34. According to the court, "Mr. Nieves' criminal history show[ed] a pattern of drug trafficking and weapons offenses in a city already plagued by violence." AD34. The court cited high "homicide rate[s]" in Puerto Rico, and concluded that "[b]ecause Mr. Nieves committed an offense from a community already suffering from higher rates of gun violence, a higher sentence is warranted to provide additional deterrence." AD35. Again, the district court erred in several important respects:

As an initial matter, the court clearly erred in how it characterized Mr. Nieves's criminal history at sentencing. *See Brown*, 31 F.4th at 46. Mr. Nieves's history did not show "a pattern of drug trafficking and weapons offenses." AD34; *see also* AD38-AD40 (defense counsel objecting

to the characterization). Mr. Nieves's criminal history showed a single, controlled substance conspiracy offense dating back over a decade to 2012. SA12-SA13 (2024 PSR citing 2012 case); A201 (judgment in 2012 case showing a single conviction for conspiracy with intent to distribute under 21 U.S.C. § 841(a)(1)); *see also see* AD39 (defense counsel telling the court Mr. Nieves "has [only] one [drug conspiracy] prior conviction").[12]

Mr. Nieves did admit to having possessed "firearms" in connection with this 2012 offense. A216 (plea agreement in Case No. 12-cr-426-FAB-35, stating Mr. Nieves acknowledged he "possessed firearms while he was acting as a seller").[13] But he was never convicted of a *weapons offense*, let

---

[12] The record also showed an arrest for three dismissed controlled substances charges from 2009. SA16 (2024 PSR). But these could not be fairly characterized as "offenses," and there is no evidence that any of these charges involved weapons. SA16. Without more, it would have been improper for the district court to rely on these dismissed charges at sentencing. *See United States v. Rivera-Ruiz*, 43 F.4th 172, 181 (1st Cir. 2022) ("a sentencing court may not rely upon a defendant's prior arrests or unproven charges in fixing a sentence, unless there is proof by a preponderance of the evidence that the defendant engaged in the underlying conduct alleged" (collecting cases)).

[13] All references to firearm possession appear to come from this plea agreement. On its face, the agreement is unclear as to whether "firearms" here refers merely to chips like the one at issue in this case, or actual guns.

alone a *pattern* of weapons offenses. Likewise, there was no record evidence that Mr. Nieves possessed an actual firearm at any point after 2012—nearly a decade prior to the instant offense. The court's description of the criminal history was thus not based on reasonable inferences supported by the record.

Relatedly, the district court was seemingly confused as to whether Mr. Nieves had at some point sold firearms, or been convicted of one or more firearm possession offenses. Prior to sentencing, the court stated that "Mr. Nieves' prior offenses involved both the selling and possession of firearms." AD33. After sentencing, the prosecutor clarified that Mr. Nieves "was a seller for a drug organization and possessed firearms but not that the firearms he possessed he had also sold." AD42; *see also id.* (court stating "[t]hat [wa]s a typographical error or an error in drafting"). But neither the prosecutor nor the court clarified that Mr. Nieves had never been convicted of a firearms possession offense, as the court appeared to believe. Because the court misunderstood the criminal history, it could not have properly explained its sentence or individualized the sentence to the community factors it later identified. *See Cotto-Negrón*, 845 F.3d at 438-39.

Moreover, despite imposing a significant upward variance, the district court failed to address critical[14] case-specific factors relating to its community-violence analysis. First, defense counsel repeatedly explained to the court that Mr. Nieves possessed only a chip and ammunition—no actual firearm. A25 ("No evidence connects him to any firearm."); AD12 ("There was also no evidence or information that at the time of the offense, Mr. Nieves possessed a firearm, that he had intention to acquire one."); AD37 ("My client was found in possession of one chip and a bag of ammunition that was loose[.]") These items were not inherently dangerous and could not be rendered dangerous without a gun—and the district court did not find otherwise. Additionally, though Mr. Nieves was in constructive possession of the items, there was no record evidence that he used them, or that they belonged to him, as

_____

[14] Again, defense counsel's objections to the community considerations analysis as improperly explained and insufficiently specific was a key and recurring theme below. A27-A29 (raising argument in resentencing memorandum); AD12-AD13 (same, prior to sentencing); AD40-41 (same, after sentencing). One which the district court did not meaningfully grapple with. *See Colón-Cordero*, 91 F.4th at 55 (noting that, though courts need not engage with all of counsel's arguments at sentencing, where context requires it, they should address the main ones).

defense counsel pointed out.[15] A25; AD12. And defense counsel's observations were rendered even more likely by the district court's finding that the San Juan apartment was a "a drug trafficking point where the police had observed him engaging in drug sales," AD34 and not an apartment where Mr. Nieves resided, *see* A25 (counsel stating "the government assumes that the apartment where the arrest took place belonged to Mr. Nieves, but nothing in the record establishes this").[16] Yet the district court did not explain any of these case-specific factors in its community considerations analysis. *But see* AD40 (court stating it could "consider [community factors] in conjunction with the defendant's specifics" but failing to engage with counsel's arguments).

---

[15] Mr. Nieves only stipulated to the elements of the possession offenses. A144. Therefore, he could have been in constructive possession of them, without ever even having had touched or owned them. *United States v. Fernández-Jorge*, 894 F.3d 36, 43-44 (1st Cir. 2018) (noting constructive possession requires only knowingly having power and intention of exercising dominion and control over a firearm either directly or through others—and that having control over an area may suffice for constructive possession).

[16] Likewise, the location of the items rendered it unlikely that Mr. Nieves had used these items, or imminently planned to use them at the time of his arrest. *See* A153 (government memorandum showing the ammunition atop a tall kitchen cabinet); A153 (same, stating the chip was found in a bedroom, with no mention of a gun that could fit the chip).

Finally, despite defense counsel's repeated objections,[17] the district court did not tie Mr. Nieves current or past conduct to the homicide rate in Puerto Rico. Even if the district court had properly characterized Mr. Nieves's criminal history, at most it would have found that, at some point before 2012, Mr. Nieves admitted he "possessed firearms while he was acting as a seller," in connection with a drug conspiracy offense. A216 (plea agreement in Case No. 12-cr-426-FAB-35). Yet not only did the court misstate this record, but—because the district court failed to connect Mr. Nieves's action to any actual violence—the driving force of behind its analysis seemed to be the mere fact Mr. Nieves possessed multiple bullets and a chip.[18] The court did not find these items were

---

[17] *See* A27 ("[T]he prosecution's memorandum … invokes the specter of gun violence to support its generalized fears that passive firearm possession inevitably leads to violence, putting forth homicide and murder rates, which are crimes that Mr. Nieves has never been accused of, let alone convicted."); AD40 ("Again, the community's concerns with violence, my client has no history of violence. He has a prior conviction for an 841 offense. Yes, I know the plea agreement says that he admitted that he possessed firearms in connection with that 841 conviction, and it's in the PSR. There is no history of violence against my client.")

[18] In fact, this was the driving force behind the initial sentencing—the court's observations concerning the dangerous nature of the chip and firearms. *See* A102. And defense counsel thoroughly addressed this

dangerous on their own and, even on a generous reading of the record, the items could not have readily been made dangerous based on the contents of the San Juan apartment.

In this way, this case resembles this Court's line of decisions in *Rivera-Berríos*, *Carrasquillo-Sánchez*, and *García-Pérez*. *See United States v. Carmona-Alomar*, 109 F.4th 60, 74-75 (1st Cir. 2024) (discussing cases). There, the sentencing court erred by "emphasiz[ing] 'the nature of the firearm involved in the offense of conviction' while failing to provide 'an explanation as to how [the defendant's] crime differed from the mine-run of machine gun possession cases within the contemplation of the sentencing guidelines.'" *Id.* (citing *United States v. Rivera-Berríos*, 968 F.3d 130, 136 (1st Cir. 2020)). Here, the district court did not explicitly mention the dangerous nature of the chip and bullets at resentencing. It focused instead on the mere fact of possession—not the specific circumstances of what Mr. Nieves possessed, and how these items could be made dangerous in this case. And despite its assertion to the contrary, AD40, because it both misunderstood the record, and failed to engage

---

concern in his resentencing memorandum, A15-A20, and at the resentencing hearing, AD12-AD13.

with key facts raised by counsel below, the district court did not and could not provide the required case-specific analysis here.

**C.** **The court misunderstood Mr. Nieves's criminal history, and that history alone could not justify a 25-month upward variance.**

Finally, the district court justified its upward variance based on "Mr. Nieves' criminal history." AD33. The court observed that Mr. Nieves's "prior offenses involved both the selling and the possession of firearms," AD33, later correcting itself at the government's prompting, *see* AD42. It further noted that Mr. Nieves had been incarcerated "twice for supervised release violations, and his release from his most recent term of incarceration was mere months before he committed his latest offense." AD33. And it concluded that this showed "a troubling pattern and indicate[s] that he has not learned from his previous sentences and show[ed] that the possibility of recidivism … is unreasonably high." AD33.

This analysis failed to properly explain and consider the specifics of Mr. Nieves's case. First, as explained above, *see supra*, Parts I.A. and I.B., the district court's description of the criminal history misstated the record. Second, the court overstated the import of the supervised-release

violations. As defense counsel pointed out, these "were technical violations; using drugs, not reporting to the Probation Officer." AD 39. And these violations were "addressed at the higher end [revocation] sentence that the Court imposed of 18 months." AD39. The court addressed neither of these concerns. The time between Mr. Nieves's release and his new offense could have provided a justification for an upward variance. *See United States v. Polaco-Hance*, 103 F.4th 95, 102 (1st Cir. 2024). But the district court did not explain how this alone could have justified a 25-month variance, especially when this fact was already before the court in 2021, *see* A101, SA41, and at the time it only sentenced Mr. Nieves to a 13-month upward variance, A102. The district court identified nothing else in the criminal history that would take this beyond the mine-run case, where criminal history is already accounted for in the GSR calculations.

## II. The district court's sentence was substantively unreasonable because the court accepted a lower Guidelines range, yet provided for a greater, unexplained and illogical upward variance.

"When confronted with a claim that a sentence is substantively unreasonable, [this Court's] 'key inquiry is whether the sentencing court has articulated a plausible rationale and reached a defensible result.'"

*United States v. Carrasquillo-Vilches*, 33 F.4th 36, 44 (1st Cir. 2022) (quoting *United States v. Coombs*, 857 F.3d 439, 452 (1st Cir. 2017)). "There is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes." *United States v. Clogston*, 662 F.3d 588, 592 (1st Cir. 2011) (citing *United States v. Martin*, 520 F.3d 87, 92 (1st Cir. 2008)). And this Court evaluates "whether the sentence, in light of the totality of the circumstances, resides within the expansive universe of reasonable sentences." *United States v. Crespo-Ríos*, 787 F.3d 34, 37 (1st Cir. 2015) (quoting *United States v. King*, 741 F.3d 305, 308 (1st Cir. 2014)).

"Where, as here, the district court imposes an upwardly variant sentence, it must explain its reasons for doing so." *United States v. Flores-Nater*, 62 F.4th 652, 655 (1st Cir. 2023) (citations omitted). A court's duty to explain "increases in proportion to the extent of the court's deviation from the guideline range: the greater the deviation, the greater the burden of justifying the sentence imposed." *United States v. Montero-Montero*, 817 F.3d 35, 37 (1st Cir. 2016) (citations omitted).

This Court has held sentences are implausible and indefensible where district courts have: (1) failed to "articulate[] a plausible

sentencing rationale," *Flores-Nater*, 62 F.4th at 657; (2) shown "heavy reliance [at sentencing] on protected conduct that was not tied through extrinsic evidence to any relevant sentencing factor," *United States v. Álvarez-Núñez*, 828 F.3d 52, 58 (1st Cir. 2016); (3) created a "substantial disparity with the sentences given to co-defendants and [failed to identify a] supportable basis for the inconsistency." *United States v. Reyes-Santiago*, 804 F.3d 453, 473 (1st Cir. 2015) (citation omitted).

Here the district court accepted a lower GSR on remand yet imposed a higher upward variance—25 months above the range, rather than the 13-month variance originally imposed in 2021. In addition to being based on inadequate explanations,[19] the 2024 sentence was implausible and indefensible. Because the district court relied on the

---

[19] This Court has noted that the plausible rationale element of the test for substantive reasonable is akin to the "procedural duty to adequately explain an upwardly variant sentence." *Flores-Nater*, 62 F.4th at 655 n.2 (collecting cases); *see also United States v. García-Pérez*, 9 F.4th 48, 52 n.1 (1st Cir. 2021) (noting the failure to adequately explain argument can be characterized as part of the procedural or substantive challenge to a sentence, and adopting the framing provided by the parties). Mr. Nieves therefore incorporates his procedural arguments concerning the district court's failure to explain its sentence from the foregoing sections here. *See supra*, Part I. While the arguments overlap, Mr. Nieves raises here additional points that this Court has considered as part of a substantive unreasonableness analysis.

same record and arguments presented and relied upon in 2021, and because the court disavowed any new policy basis for further variance, its 2024 sentence cannot stand.[20] Comparing the 2021 sentencing proceedings and the 2024 resentencing proceedings highlights four points which render the 2024 sentence implausible and indefensible:

### A. In 2021, all critical facts and arguments were before the court, the government sought only a mid-range sentence, and the court imposed only a 13-month variance.

First, in 2021, the government proposed a then-mid-range sentence of 66 months using almost the exact same rationale it used in 2024 to advocate for a 25-month upward variance. *Compare* A37-A42 (2024 sentencing memorandum) *with* A155-A161 (2021 sentencing memorandum). Thus, the government's 2021 advocacy also emphasized:

---

[20] At the 2024 resentencing, the district court relied on three main justifications for its upward variance: the nature and circumstances of the offense, namely the number of bullets; community considerations, mainly gun violence and homicides in Puerto Rico; and Mr. Nieves's criminal history. AD33-AD35. These justifications mirrored almost exactly what the government argued in its remand memorandum. See A37-A42 (identifying these same factors as the reason for the upward variance and using similar language to the district court's sentencing).

the nature and circumstances of the offense, A156-A157;[21] community considerations including gun violence in Puerto Rico, A157-A160; and criminal history, A156. Accepting those arguments, in 2021 the court opted for a 13-month upward variance. A102-A103. Nothing in the record, the government's arguments, or the court's reasoning at that time indicated that these factors justified anything greater. Thus, barring some additional supportable basis, it defies logic that the same set of factors that in 2021 justified a mid-range GSR sentence for the government, and a 13-month upward variance for the district court, would in 2024 justify a 25-month upward variance for both the government and the court.[22]

---

[21] Whereas in 2024 the government emphasized amount of ammunition as the more relevant factor, *see* A39-A40, in 2021 the government emphasized both the "larg[e] [sic] amount of ammunition," A156, and the dangerous nature of machineguns, A157. At the 2021 sentencing, the district court appeared to justify its upwardly variant sentence based mainly on the dangerous nature of machineguns. *See* A102.

[22] In fact, in 2021 the government made additional arguments concerning deterrence, A158, and the need to protect the public, A159, which it appeared to deemphasize in 2024, *see* A37-A42.

**B.** **This Court's 2024 remand allowed the district court to vary upward if it either adopted a valid policy disagreement or justified its reasoning based on factual differences, but the district court did neither.**

Second, although the government did advance one significantly different policy-type rationale for the upward variance in 2024, the district court explicitly rejected that as the basis for the upward variance. This Court's remand judgment seemingly allowed a policy-based variance, specifically noting that, if the district court did not intend to rely on a policy disagreement under *Kimbrough*, "it must provide on remand, a case-specific explanation for the upward variance."[23] *United States v. Nieves-Díaz*, 99 F.4th 1, 10 n.3 (1st Cir. 2024). So, the government's 2024 sentencing memorandum invited the district court to fill a "void" in the Guidelines, arguing that the district court should adopt a higher variance, for policy reasons. A34-A35; *see also* AD18-AD21 (arguing same before the court). But at the resentencing hearing the district court explicitly refused to adopt a policy rationale. After a lengthy exchange with the prosecutor, AD22-AD24, the district court stated this

_____

[23] As explained in Part I, the district court's explanations to this effect were inadequate.

was "a matter for the Sentencing Commission to clear up," and it did not "have to get into it," AD24. Despite the government's repeated requests, the district court never mentioned *Kimbrough* or identified a policy disagreement at the hearing.[24]

## C. On remand, the government introduced new arguments to insulate the sentence from review, but the district court refused them.

Third, although there are situations where a district court untethers its sentencing rationale from a GSR, this was not one of them. Much like with the policy argument, in 2024 the government also invited the district court to "fortify the sentence from further attacks by indicating that it would impose that sentence regardless of the Guidelines calculation." A42; *see also* AD21 (making the same argument at resentencing and citing *United States v. Ouellette*, 985 F.3d 107, 110

---

[24] The district court did check the box for "Policy Disagreement with the Guidelines" in the statement of reasons. SA3 (citing *Kimbrough*). But the court did not explain this supposed policy disagreement in its statement of reasons at all. *See* SA3-SA4. And it disavowed taking into consideration a policy disagreement at sentencing. AD24. This Court should therefore follow its usual practice of favoring "the oral explanation of a sentence over the written judgment when they materially conflict." *United States v. Serrano-Berríos*, 38 F.4th 246, 251 (1st Cir. 2022) (citing *United States v. Cali*, 87 F.3d 571, 579 (1st Cir. 1996)).

(1st Cir. 2021)). The district court declined that invitation. Rather than
"mak[ing] clear that it would have entered the same sentence regardless
of the Guidelines," *Ouellette*, 985 F.3d at 110, the district court did the
opposite. It adopted a GSR of 33 to 41 months, AD31, summarized the
facts of the case, AD31-AD33, and imposed an upwardly variant
sentence, AD33-AD36—but this time by 25 months, nearly double the
original variance.

> **D.   Where the district court rejected all new upward
> variance arguments, only the original 13-month
> variance could plausibly stand.**

Finally, the court's 2024 variance relied on the exact same facts and
arguments that previously yielded either a mid-range recommendation
from the government or, at most, a 13-month variance from the court
itself. If the court's 2021 view was that, on these facts, 13 months above
the Guidelines was the appropriate sentence, then imposing a much
larger variance in 2024, with no new basis, necessarily fails the
requirement of "articulat[ing] a plausible sentencing rationale." *Flores-
Nater*, 62 F.4th at 653. Indeed, the government waived any claim that
the 2021 court overlooked facts justifying a higher variance by not
appealing the original sentence. And, because the district court expressly

declined the two additional rationales the government offered on remand, there is nothing left to support anything beyond the 13-month upward variance. In these circumstances, the only coherent remedy is a further remand with instructions to impose no more than the 13-month upward variance initially deemed appropriate. *Cf. Rivera-Berríos*, 968 F.3d at 137 (remanding "for resentencing within the guidelines sentencing range" where "the record reveals no circumstance that could justify an upwardly variant sentence").[25]

***

In short, the district court's flawed reasoning rested on stale arguments that had already been used to justify a lesser variance in 2021. And the court disclaimed the two new arguments the government

---

[25] Counsel below also raised several arguments concerning the potential sentencing disparity with other defendants here. *See* AD41-AD42. These other defendants were likely not sufficiently similarly situated to Mr. Nieves. *See Reyes-Santiago*, 804 F.3d at 467 (noting it is "difficult to isolate identically situated co-defendants" (quotation omitted)). But defense counsel's point—that defendants with chips alone do not tend to be sentenced to such high upward variances—lends additional, indirect support to the conclusion the district court's sentence was both procedurally and substantively unreasonable. *Cf. Crespo-Ríos*, 787 F.3d at 40 (considering the disparity argument when finding procedural unreasonableness).

proposed. This unexplained jump to a higher variance was neither "plausible" nor "defensible," *Carrasquillo-Vilches*, 33 F.4th at 44, and cannot stand. The sentence should therefore be vacated and remanded with instructions limiting the upward variance to 13 months. [26]

## III. After two failed attempts at sentencing, this Court should remand to another judge.

Under 28 U.S.C. § 2106, this Court may "require such further proceedings to be had as may be just under the circumstances." This includes "assign[ing] a case to a different judge on remand" for resentencing. *United States v. Colón-Cordero*, 91 F.4th 41, 58 (1st Cir. 2024). In reassigning a case, this Court considers whether: (1) "the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous," (2) "reassignment is advisable to preserve the appearance of justice," and

_____

[26] Although this Court ordinarily addresses procedural reasonableness before addressing substantive reasonableness, a proper remedy in Mr. Nieves's case requires the Court addressing both reasonableness prongs. *Cf.* 28 U.S.C. § 2106 (stating this Court "may remand the cause and … require such further proceedings to be had as may be just under the circumstances").

(3) "reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness." *Maldonado Santiago v. Velázquez García*, 821 F.2d 822, 832 (1st Cir. 1987) (citing *United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977)); *see also Colón-Cordero*, 91 F.4th at 58 (identifying similar factors). All three factors favor reassignment here.

First, it appears this judge would have a difficult time putting aside his previous views on this case. Both at the initial sentence and resentencing, the judge appeared mistakenly fixated on the dangerousness of bullets and conversion devices, divorced from the specific facts of this case. *See* A102 (2021 sentencing transcript, focusing on the dangerousness of machineguns, without reference to the specifics of this case); AD34 (2024 resentencing transcript, same with respect to number of bullets). This is consistent with prior sentences of this same district court in firearms possession cases, where this Court has reversed and remanded based on procedural unreasonableness. *See, e.g., Colón-Cordero*, 91 F.4th at 55 (reversing for failure to explain significant mitigating factor in machinegun possession case, and remanding to a different judge); *United States v. Muñoz-Fontanez*, 61 F.4th 212, 215 (1st

Cir. 2023) (reversing for failure to explain upward variance in firearms and drug trafficking case, and remanding without reassignment); *United States v. García-Pérez*, 9 F.4th 48, 55 (1st Cir. 2021) (reversing where court focused on dangerousness of machineguns, and remanding without reassignment); *United States v. Rivera-Berríos*, 968 F.3d 130, 137 (1st Cir. 2020) (same). A similar sentencing error is likely here on a second remand.

Second, preserving the appearance of justice counsels in favor of reassignment. The district court here has already had two opportunities to get the sentence right. It has not done so. If this Court were to find the district court erred a third time, even where the impartiality of the judge is not in question, such repeated errors would give the appearance of bias against Mr. Nieves or similarly situated defendants. *See United States v. Hernández-Rodríguez*, 443 F.3d 138, 148 (1st Cir. 2006) (reassigning even where "the district judge in this case would conduct the necessary proceedings with impartiality"); *see also Mawson v. United States*, 463 F.2d 29, 31 (1st Cir.1972) ("It is difficult for a judge, having once made up his mind, to resentence a defendant, and both for the judge's sake, and the appearance of justice, we remand this case to be redrawn."). By

remanding to a different judge—even if another error were to occur on remand—this Court would help preserve the appearance of justice and fairness in sentencing.

Finally, any waste would not be disproportionate to the gain of preserving the appearance of fairness. This is a straightforward case without a lengthy trial record. The record consists mainly of a plea agreement, sentencing memoranda, and a PSR. On remand, there would be no complicated or novel legal questions for the district court to grapple with. It would merely have to consider the facts of the case and impose a fair sentence, consistent with this Court's opinion. Any potential duplication would likely therefore be minimal. And as noted in the previous paragraphs, an appearance of unfairness is likely.[27] The Court should thus reassign the case on a potential remand.

---

[27] Moreover, Mr. Nieves is expected to be released by May 4, 2027. *See supra*, note 2. Depending on if and when the case is remanded, he would be close to the end of his sentence—such that a third sentencing appeal could see him possibly overserving time. This too counsels in favor of remand to a different judge.

## CONCLUSION

This Court should vacate the district court's judgment and remand for resentencing to a different judge, consistent with this Court's opinion.

**Respectfully submitted.**

In San Juan, Puerto Rico, on March 24, 2025.

> RACHEL BRILL
> Federal Public Defender
> District of Puerto Rico
>
> FRANCO L. PÉREZ-REDONDO
> Assistant Federal Public Defender
> Supervisor, Appellate Unit
>
> s/CELSO JAVIER PÉREZ CARBALLO
> Assistant Federal Public Defender
> First Circuit Bar No. 1195454
> 241 F.D. Roosevelt Ave.
> San Juan, Puerto Rico 00918-2441
> Telephone: (787) 281-4922
> Fax: (787) 281-4899
> Email: Celso_Perez@fd.org

**CERTIFICATE OF COMPLIANCE**

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9,564 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This is less than the 13,000-word limit.

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using a 14-point Century Schoolbook font.

In San Juan, Puerto Rico, on March 24, 2024.

s/ CELSO JAVIER PÉREZ CARBALLO
Assistant Federal Public Defender
First Circuit Bar No. 1195454
Email: Celso_Perez@fd.org

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and exact copy of this Appellant's Opening Brief was filed with the Clerk of Court using the CM/ECF system which will send notification to all parties of record, including counsel for the appellee.

In San Juan, Puerto Rico, on March 24, 2024.

**s/ CELSO JAVIER PÉREZ CARBALLO**
Assistant Federal Public Defender
First Circuit Bar No. 1195454
Email: Celso_Perez@fd.org

# In the United States Court of Appeals for the First Circuit

UNITED STATES OF AMERICA,
*Appellee,*

v.

HECLOUIS JOEL NIEVES-DÍAZ,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the District of Puerto Rico
D. Ct. No. 20-CR-353-FAB-1
Hon. Francisco A. Besosa, U.S. District Judge

## ADDENDUM TO APPELLANT'S OPENING BRIEF

RACHEL BRILL
Federal Public Defender
District of Puerto Rico

241 F.D. Roosevelt Ave.
San Juan, PR 00918
T. (787) 281-4922
F. (787) 281-4899
E. Celso_Perez@fd.org

FRANCO L. PÉREZ-REDONDO
Assistant Federal Public Defender
Supervisor, Appellate Unit

CELSO JAVIER PÉREZ CARBALLO
Assistant Federal Public Defender

Attorneys for Defendant-Appellant
HECLOUIS JOEL NIEVES-DÍAZ

# INDEX

Amended Judgment,
Docket No. 60 (Aug. 26, 2024) ................................................... 1

Transcript of Resentencing Hearing,
Docket No. 67 (Dec. 5, 2024) ................................................... 8

# UNITED STATES DISTRICT COURT

District of Puerto Rico

| | |
|---|---|
| UNITED STATES OF AMERICA | **AMENDED JUDGMENT IN A CRIMINAL CASE** |
| **v.** | |
| Heclouis Joel NIEVES-DIAZ (1) | Case Number:  3:20-CR-00353-01 (FAB) |
| | USM Number:  41031-069 |

**Date of Original Judgment:** 6/22/2021
*(Or Date of Last Amended Judgment)*

AFPD Ivan Santos-Castaldo
Defendant's Attorney

**THE DEFENDANT:**

☑ pleaded guilty to count(s)   One (1), Two (2), and Three (3) on March 11, 2021.

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC § 922(g)(1) and 924(a)(2) | Prohibited person in possession of ammunition, a convicted felon. | 10/13/2020 | One (1) |
| 18 USC § 922(o) and 924(a)(2) | Illegal possession of a machinegun. | 10/13/2020 | Two (2) |
| 21 USC § 841(a)(1) and 841(b)(1)(C) | Possession with intent to distribute cocaine. | 10/13/2020 | Three (3) |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) _____   ☐ is   ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

8/26/2024
Date of Imposition of Judgment

S/ FRANCISCO A. BESOSA
Signature of Judge

Hon. Francisco A. Besosa, Senior U.S. District Judge
Name and Title of Judge

8/26/2024
Date

AD1

DEFENDANT:  Heclouis Joel NIEVES-DIAZ (1)
CASE NUMBER:  3:20-CR-00353-01 (FAB)

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of :
* Sixty-six (66) months as to each Count, to be served concurrently with each other, consecutively to the revocation of supervised release sentence imposed in Cr. No. 12-426. The Judgment entered on June 22, 2021, stands as to all other matters, to include the term of supervised release that was imposed.

☑ The court makes the following recommendations to the Bureau of Prisons:
   * The defendant be designated to FCI Williamsburg in SC, allow him to participate in vocational training courses, English as second language courses, and the 500-hour drugs/alcohol treatment program if he qualifies.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

   ☐ at _____  ☐ a.m.  ☐ p.m.  on _____ .

   ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐ before 2 p.m. on _____ .

   ☐ as notified by the United States Marshal.

   ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AD2

DEFENDANT:  Heclouis Joel NIEVES-DIAZ (1)
CASE NUMBER:  3:20-CR-00353-01 (FAB)

# SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :

*The Judgment entered on June 22, 2021, stands as to the term of supervised release that was imposed, which was the following: Three (3) years as to Count One and Two, and five (5) years as to count Three, to be served concurrently to each other under the following mandatory, standard, and Special/Additional Conditions of Supervision.

# MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   - ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☐ You must make restitution in accordance with 18 U.S.C. § 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq*.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AD3

Judgment—Page 4 of 7

DEFENDANT: Heclouis Joel NIEVES-DIAZ (1)
CASE NUMBER: 3:20-CR-00353-01 (FAB)

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____    Date _____

AD4

Judgment—Page   5   of   7

DEFENDANT:   Heclouis Joel NIEVES-DIAZ (1)
CASE NUMBER:   3:20-CR-00353-01 (FAB)

# ADDITIONAL SUPERVISED RELEASE TERMS

1. He shall observe the standard conditions of supervised release recommended by the United States Sentencing Commission and adopted by this Court and shall not commit another Federal, state, or local crime.

2. He shall participate in transitional and reentry support services, including cognitive behavioral treatment services, under the guidance and supervision of the Probation Officer. He shall remain in the services until satisfactorily discharged by the service provider with the approval of the Probation Officer.

3. He shall participate in vocational training or a job placement program, as recommended by the U.S. Probation Officer.

4. He shall provide the Probation Officer access to any financial information upon request.

5. He shall cooperate in the collection of a DNA sample, as directed by the Probation Officer, pursuant to the Revised DNA Collection Requirements, and Title 18, U.S. Code Section 3563(a)(9).

6. He shall submit himself and his property, house, residence, vehicles, papers and effects, computers and other electronic communication or data storage devices or media to a search, at any time, with our without a warrant, by the probation officer, and if necessary, with the assistance of any other law enforcement officer but only in the lawful discharge of the supervision functions of the probation officer with reasonable suspicion of unlawful conduct or of a violation of a condition of supervised release. The probation officer may seize any electronic communication or electronic device or medium which will be subject to further forensic investigation or analysis. Failure to permit a search and seizure may be grounds for revocation of supervised release. He shall warn any other resident or occupant that the premises may be subject to searches pursuant to this condition.

7. He shall not use controlled substances unlawfully and shall submit to a drug test within fifteen (15) days of release from imprisonment; after his release, Mr. Nieves shall submit to random drug testing, not less than three (3) samples during the supervision period, but not to exceed 104 samples per year, in accordance with the Drug Aftercare Program Policy of the United States Probation Office as has been approved by this Court. If the illegal use of controlled substances is detected in any sample, Mr. Nieves shall participate in an inpatient or an outpatient substance abuse treatment program, for evaluation or treatment, as arranged by the U.S. Probation Officer; payment shall be based on his ability to pay or the availability of payments by third parties, as approved by the Court.

DEFENDANT:  Heclouis Joel NIEVES-DIAZ (1)
CASE NUMBER:  3:20-CR-00353-01 (FAB)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the following total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $ 300.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |

☐  The determination of restitution is deferred until _____ .  An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐  The defendant shall make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| | | | |
|---|---|---|---|
| **TOTALS** | $          0.00 | $          0.00 | |

☐  Restitution amount ordered pursuant to plea agreement  $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

☐  the interest requirement is waived for   ☐  fine   ☐  restitution.

☐  the interest requirement for the   ☐  fine   ☐  restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AD6

Judgment — Page   7   of   7

DEFENDANT:   Heclouis Joel NIEVES-DIAZ (1)
CASE NUMBER:   3:20-CR-00353-01 (FAB)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

**A**   ☑   Lump sum payment of $   300.00   due immediately, balance due

     ☐   not later than _____ , or
     ☐   in accordance with   ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

**B**   ☐   Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

**C**   ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D**   ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E**   ☐   Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**   ☐   Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

| Case Number Defendant and Co-Defendant Names *(including defendant number)* | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate. |
|---|---|---|---|
| | | | |

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☑   The defendant shall forfeit the defendant's interest in the following property to the United States:
     any firearms and ammunitions involved in the commission of the offense, including, but not limited to: one hundred and forty-nine rounds of .223 caliber ammunition and a machinegun conversion device; any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offenses and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the Commission of the offense.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

AD7

**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

_____

UNITED STATES OF AMERICA,            CASE NO.: 20-CR-353-FAB

       PLAINTIFF,

V.                                   OLD SAN JUAN, PUERTO RICO

HECLOUIS JOEL NIEVES-DIAZ,           AUGUST 26, 2024

       DEFENDANT.              MONDAY - 9:17 A.M.

_____

RESENTENCING PROCEEDINGS
BEFORE THE HONORABLE JUDGE FRANCISCO A. BESOSA
UNITED STATES DISTRICT COURT OF PUERTO RICO
(PAGES 1-39)

_____

<u>APPEARANCES:</u>

**FOR THE GOVERNMENT:**

GREGORY BENNET CONNER
UNITED STATES ATTORNEY'S OFFICE
TORRE CHARDON, SUITE 1201
350 CARLOS CHARDON AVENUE
SAN JUAN, PR 00918
787-772-4074
GREGORY.CONNER2@USDOJ.GOV

**FOR THE DEFENDANT:**

AFPD IVAN SANTOS-CASTALDO
FEDERAL PUBLIC DEFENDER'S OFFICE
PATIO GALLERY BUILDING
241 FRANKLIN D. ROOSEVELT AVE.
HATO REY, PR 00918-2441
787-281-4922
IVAN_SANTOS@FD.ORG

**COURTROOM DEPUTY:**

MIGDALIA GARCÍA-COSME

```
 1                      P-R-O-C-E-E-D-I-N-G-S

 2   (9:17 A.M.)

 3           THE COURT:  You may be seated.  Good morning.

 4           COURTROOM DEPUTY:  Criminal Case Number 20-353.

 5   United States of America versus Heclouis Joel Nieves-Diaz for

 6   resentencing hearing.

 7           On behalf of the Government is AUSA Gregory Conner.

 8           On behalf of the Defendant is AFPD Ivan Santos.

 9           The Defendant is present in court, under custody,

10   and is assisted by a certified Court Interpreter.

11           THE COURT:  Are you ready, Mr. Santos?

12           MR. SANTOS:  Yes, Your Honor.

13           THE COURT:  Are you ready?

14           MR. CONNER:  Yes.  Good morning, Your Honor.

15           THE COURT:  Thank you for your sentencing

16   memorandum, Mr. Santos.

17           MR. SANTOS:  First, although I know the Court is

18   aware of this, I would like to state for the record that

19   Mr. Nieves-Diaz is challenging the base offense level that

20   was imposed in this case particularly that Mr. Nieves had the

21   prior conviction for the controlled substance offense, should

22   that be granted in the Superior Court if they find that his

23   conviction does not amount to a controlled substance offense.

24   His base offense level would be reduced too.

25           I mentioned this filed at docket 52 and a sentencing
```

1    memorandum filed at docket 57.  We would incorporate those

2    arguments raised in the petition as well as docket 26, PSR.

3         **THE COURT:**  The petition for certificate was filed

4    without a stay which means that this Court still has

5    jurisdiction over Mr. Nieves-Diaz for his sentence.

6         **MR. SANTOS:**  Yes, Your Honor.  I'm not indicating

7    that this sentencing should not go forward.

8         **THE COURT:**  Well, I did want to put it for the

9    record also.

10        **MR. SANTOS:**  Secondly, we filed a resentencing

11   memoranda at docket 57 recommending that the Court sentence

12   Mr. Nieves to a term of imprisonment of 33 months which is a

13   sentence that would fall within the guidelines under both

14   guideline ranges as calculated in the PSR which is the second

15   amended PSR and the guideline range of 30 to 37 months which

16   we contend is the correct guideline that should apply to

17   Mr. Nieves-Diaz's case.

18        As mentioned in the memorandum, Mr. Nieves-Diaz has

19   served 46 months of imprisonment since his arrest.  The first

20   circuit affirmed his sentence in Criminal Number 12-426 which

21   was 18 months of imprisonment.  So discounting that time and

22   assuming that he has earned no time for earned time credits

23   or good time credits, he has served 28 months of imprisonment

24   towards this sentence.

25        Now, as the First Circuit mounted the opinion at

1   docket 41, the chip that Mr. Nieves-Diaz was found in

2   possession does not meet the definition of a firearm under

3   Application Note 1 of 2K2.1.  This makes sense from an

4   assessment of culpability perspective which is what the Court

5   is called upon to do at this sentencing hearing.

6         Chips alone, although they are prohibited under

7   9220, do not present the same level of risks as actual guns.

8   and, therefore, should not warrant the same level of

9   punishment.  When we look at the heartland of a machinegun

10  possession case, we look at an actually fully functioning

11  automatic weapon, not just a chip.  Chips as well as

12  ammunition cannot cause harm by themselves.

13        In fact, the only other case that I could find where

14  this Court imposed a sentence in a case where the defendant

15  was found in possession of a chip, not a modified pistol or a

16  rifle, the sentence that was imposed was a lower end of the

17  guideline sentence.  In that case, 37 months which was

18  Criminal Case Numbers 20-385 and 23-194, the same total

19  offense level of 19 as in this case, Your Honor.  It was

20  determined considering that the defendant possessed a chip

21  after sustaining a conviction for a crime of violence or

22  controlled substance offense, in that case, a 924(c)

23  violation, and the defendant was also under supervised

24  release.

25        The Court also found, after the defendant plead

```
 1    guilty, that aside from his possession of the chip, he was

 2    engaging in the sale of firearms.  Multiple pictures of

 3    different firearms were found in his phone as well and the

 4    defendant criminal history category in that case was a level

 5    three as opposed to Mr. Nieves which stands at two because of

 6    the status point amendments.

 7           Conversely, in the proceedings in this case, the

 8    Government adduced no evidence that the items found in the

 9    apartment where Mr. Nieves was arrested, mainly the Glock

10    chip and ammunition, belonged to him much less he intended to

11    use them or that they had any connection to the drugs that he

12    was also found in possession of.  It was the finding of the

13    First Circuit that they had no connection to either item.

14           There was also no evidence or information that at

15    the time of the offense, Mr. Nieves possessed a firearm, that

16    he had intention to acquire one.  The Government speculates

17    as to why Mr. Nieves possessed those items saying that it was

18    either eminent that he would acquire a firearm or that he

19    would sell the items.  It is just that speculation.  It

20    should not warrant reliance from the Court when imposing

21    sentence.

22           They talk about in the memorandum the dangerousness

23    of machineguns and their capacity is to shoot thousands of

24    bullets in seconds.  Your Honor, those concerns should not be

25    material in this case because Mr. Nieves did not possess a
```

<pre>
 1    modified pistol rifle, just a chip.  There were no magazines
 2    either.  The bullets that were found were not compatible with
 3    any firearm where a chip could be installed.  Mr. Nieves is
 4    also receiving an elevated offense level based on the chip,
 5    where others would have the same offense level for a fully
 6    functional modified firearm that, in fact, should lower the
 7    defendant's sentence which the Defense is recommending.
 8            The Government argued that the possession of
 9    ammunition is not considered by the guidelines and cites
10    several cases to support its contention that such additional
11    ammunition should merit an upward variance but, again, Your
12    Honor, those cases involve defendants possessing fully
13    functional firearms with a chip attached or with some
14    alteration.  They are just not applicable to Mr. Nieves' case
15    where only a chip was found.  There was no gun.  There were
16    no magazines.  The addition of ammunition could not have been
17    used in conjunction with that chip.
18            In a recent oral argument in the fifth floor of this
19    building, Your Honor, this year, one of the prosecutors, I
20    believe, it was AUSA Godfried was asked by the First Circuit
21    about this issue of ammunition and the amount.  I remember
22    him indicating that, and arguing that it's not so much about
23    the quantity of the ammunition but in the manner in which it
24    was possessed.
25            What I am referring to is he argued that if the
</pre>

1   ammunition was loose in a bag as apposed to loaded into

2   magazines, ready to be used, that would go towards the

3   relevance of that additional ammunition in the analysis of

4   culpability.

5           Here, the bullets, again, were loose, in a bag,

6   stored on top of a cabinet in the kitchen.  There were no

7   magazines found and, again, no gun.

8           These arguments about the additional ammunition were

9   not made by the Government during its initial sentencing

10  hearing to support the guideline sentence.  They were

11  requesting a mid range sentence and the Government made no

12  indication that the amount of ammunition found was not

13  considered by the Guidelines and should favor an upward

14  variance.

15          As the First Circuit has stated repeatedly,

16  resentencing hearings like this one are not a second bite of

17  the apple for the Government to advance arguments that the

18  Court did not have under its consideration the first time.

19  so they should be considered waived initially.  Mr. Nieves'

20  supervised release was already addressed at his Supervised

21  Release Revocation sentence which was a higher end sentence

22  of 18 months consecutive to the sentence to be imposed in

23  this case.

24          There is no factor outlined by the Government that

25  should warrant a sentence above the guidelines in this case

1   let alone a 25-month upward variance which is 60 percent

2   above the higher end that has been calculated in the PSR.

3   Even though Mr. Nieves' criminal history has been reduced and

4   the total offense level has also been reduced dramatically,

5   the Government is still seeking the same sentence that it

6   sought at the initial sentencing hearing.  That shows that

7   the Government is not concerned by the guidelines in this

8   case which they concede is always the starting point for any

9   consideration in sentencing. They are pushing for the

10  recommendation of just, in my eyes, a random number.

11        With that said, Your Honor, after spending 46 months

12  in prison already, I do not see a reason, at this point, why

13  Mr. Nieves should be afforded further incarceration to

14  sentencing purposes in 3553(a) and we would request that a

15  sentence of 33 months be imposed.

16        **THE COURT:**  Mr. Conner.

17        **MR. CONNER:**  Thank you, Your Honor.

18        I'm going to make four quick points regarding the

19  Government's position for the sentencing.  The first pertains

20  to what the Government is permitted to say.

21        At docket entry 18, the docket reflects this was a

22  straight plea case.  There is no plea agreement that would

23  limit what the Government could say.  I have checked the

24  mandate.  I have checked the First Circuit opinion and I

25  checked all other relevant documents that I am aware of that

1  could possibly constrain what I am allowed to argue at

2  sentencing.

3          As far as I have seen, there is nothing prohibiting

4  me from making an argument in support of the Government in

5  the same way that Mr. Nieves made an argument in support of

6  his position.

7          The second point, as far as the status of this case

8  goes, there was the removal of the four point in connection

9  with the enhancement following the appellate decision.

10          Also, following the initial sentencing in this case,

11  there was an amendment to the guidelines that meant two

12  status points were removed from Nieves' criminal history

13  score and the parties and the Probation Officer are in

14  agreement that he does qualify, at this point, because the

15  case is in front of the District Court, he does qualify for

16  the removal of those two status points.

17          So the resulting guideline sentencing range, in our

18  view, is the one reflected in the amended Presentence Report

19  which is 33 to 41 months.

20          As far as our position, we are making the same

21  recommendation we made the first time around, which is 66

22  months.  In our view, that is warranted both due to the

23  history of this offender and due to the circumstances of the

24  offense.

25          As far as the history of this offender which, by the

1  way, has gone completely unmentioned in Nieves' Resentencing

2  Memorandum and in his presentation here today, this is his

3  fourth stint of incarceration.  He was incarcerated three

4  times early.

5       He was incarcerated as a seller of a DTO and he

6  carried firearms in that capacity.  He was released and then

7  he was incarcerated two more times for violations of his

8  supervised release conditions.  It was within months of that

9  third release from incarceration that he committed the

10  instant offense.

11       We provided cases in our memorandum that said this

12  Court is permitted to consider troubling patterns and

13  concerns about recidivism as permissible aggravating factors

14  when the Court considers the appropriate sentence.

15       As far as the revocation sentence that was upheld by

16  the First Circuit, that pertains to the breach of trust for

17  violating conditions of supervised release.  We included

18  reference to the *Perez* case in our resentencing memorandum

19  which says that, it is not simply the status of being on

20  supervised release and committing a crime that is a

21  permissible consideration, it's the fact that so quickly

22  after being released from incarceration, basically, the

23  defendant got right back to crime.

24       Both the fact that he had these troubling patterns

25  and the fact that he did so, so soon, I believe it was within

1  months of his release from incarceration.  Both of those, in

2  our view, warrant a stiffer sentence.

3          As far as the ammunition issue, I actually will

4  agree with my friend on the other side.  I do believe that

5  our Chief of Violent Crimes made the point that there are

6  degrees of seriousness when you are considering ammunition.

7  One of the factors is how the ammunition is situated, as in

8  loaded versus not loaded, with a person who is out in public

9  versus in their home.  But, among those various situations,

10  we agree with the amended Presentence Investigation Report

11  that one of the issues regarding ammunition that is not

12  contemplated is the amount.  So yes, he would violate this

13  same statutory provision if he had four or five rounds of

14  ammunition and he had simply 149 rounds.

15          I do want to note, I made a typo in our sentencing

16  memorandum.  The correct number is 149 rounds which is

17  reflected at the end of the Presentence Investigation Report.

18          Finally, if this Court agrees with the Government

19  that there are aggravating factors that militate in favor of

20  a stiffer sentence, it is only at that point, given the Court

21  of Appeals en banc split, it is our understanding that only

22  at that point could this Court then incorporate the concerns

23  about gun violence in Puerto Rico.

24          The focus of our argument in support of our

25  recommendation is based on the history of this offender.  And

```
 1  I do want to mention also the seriousness of the offense
 2  which leads to my final point.
 3         When the Government asked for this Court to explain
 4  whether or not its sentence was, quote, untethered from the
 5  guidelines, that wasn't unprompted.  I had a long discussion
 6  with one of the panel members in this case about whether or
 7  not the technical issues, for example, whether the definition
 8  of firearm for the base offense level would be the same
 9  definition for purposes of the enhancement.  The Court said
10  it wasn't.  But I had a long discussion with Judge Hamilton
11  about whether this Court should have to say explicitly
12  whether or not it would have imposed the same sentence
13  regardless of the Guidelines.  In fact, he suggested why not
14  remand this case so that the District Judge can say
15  explicitly that he does or does not care about this
16  discrepancy.
17         That's also why I bring in the Hixton case.  It's a
18  Northern District of Illinois case, obviously not binding.  I
19  mention it because it deals with the same issues of two
20  separate definition of firearm.  In that case, I believe
21  there were nine Glock switches.  The District Court decided
22  in a way that was consistent with the First Circuit's opinion
23  in this case, that the definition for the Glock switch would
24  not apply for purposes of the enhancement, for the number of
25  Glock switches, and it called that a void in the relevant
```

1    provisions of the guidelines.  The same textual issue is true

2    here and it's something that Judge Hamilton suggested is

3    basically the Sentencing's Commission's problem to deal with.

4           So while there is that discrepancy between the

5    definition of the basis offense level and the definition for

6    the enhancement, and while there are issues out there on the

7    ether as far as the amendment that applies in this case,

8    future amendments, the pending petition before the Supreme

9    Court, I think the suggestion by Judge Hamilton that, by the

10   way, the quote in my resentencing memorandum, and I think

11   that is verbatim, so you have his words.  That suggestion

12   applies at its (unintelligible) in this case, because there

13   are so many hyper technical issues regarding the guidelines.

14          In our view, that should not drive -- if it is the

15   starting point, we agree with Brother Counsel but what should

16   drive this Court's sentence are the aggravating factors.

17          So I believe Judge Hamilton's description of the

18   aggravating factors were the combination of drugs, a

19   machinegun conversion device and a lot the ammo.

20          Unless I am mistaken, page 7 to 8 of the amended

21   Pre-sentence Report doesn't mention cocaine.  So the fact

22   that, again, this overlaps the concerns about the troubling

23   patterns in his history, the fact that you have weaponry and

24   drugs in his initial conviction, and you have cocaine and a

25   conversion device and a lot of ammo, as Judge Hamilton says

1  in this case, we believe those factors are front and center

2  for what should drive this sentence.

3       Just one more thing.  There was some argument by the

4  Defense's resentencing memo that this is legally wrong and he

5  goes to out of circuit cases to say that this is legal error.

6  One; again, I believe in the argument that Your Honor should

7  say whether or not the sentence is untethered from the

8  guidelines because the panel suggested that and;

9       Two, the relevant First Circuit case says, "We have

10  consistently held that when a Sentencing Court makes clear it

11  would have entered the same sentence regardless of the

12  guidelines and any error in the Court's guidelines

13  calculation is harmless.  *United States vs Ouellette,* 985

14  F.3d 107, at page 110. (2021).  We believe that our argument

15  is consistent both with what the panel mentioned in argument

16  and what the governing First Circuit case is.

17       There are other relevant topics in the Defense

18  resentencing memoranda such as an amendment analysis that was

19  taking from motions in second amendment cases.  Simply put,

20  he pleaded guilty.  There is no second amendment analysis

21  that Your Honor has to do.

22       With that, our recommendation is 66 months.  Unless

23  Your Honor has questions, that's all from the Government.

24       **THE COURT:**  So the four-level enhancement, all your

25  argument about that would be moot if I don't consider the

1    four-level enhancement.

2           **MR. CONNER:**  I agree that you shouldn't consider the

3    four-level enhancement consistent with the First Circuit's

4    opinion.

5           As far as mootness, my argument is to follow the

6    encouragement behind Judge Hamilton when he said, "why not

7    remand this case so that the District Court can say whether

8    or not it cares about the technical guidelines interpretation

9    or other parts of the calculation in light of the aggravating

10   circumstances in this case."

11          To be precise, he did not say "aggravating

12   circumstances."  He said, "Why not send this back to the

13   District Court Judge to basically explain why he would or

14   would not care about the correct textual analysis of the

15   provision given the combination of drugs, a machinegun

16   conversion device and a lot of ammo."  I believe that's

17   around minute 26 to 27 of the oral argument.

18          **THE COURT:**  Well, he did plead guilty to Count 2

19   which was the illegal possession of the chip.

20          **MR. CONNER:**  Yes, Your Honor.

21          **THE COURT:**  Well, I don't know what Judge Hamilton

22   said other than what you are telling me because the opinion

23   was written by Judge Barron and it says that your argument,

24   the same argument that you are making today, fails to account

25   for Application Note One of the commentary to Section 2K2.1.

1    That note states that, "For the purposes of Section 2K2.1,

2    "firearm" has the meaning given that term in Title 18, United

3    States Code §921(a)(3).  As we explained above, 921(a)(3)

4    does not include a chip in its definition of a firearm.

5          Moreover, while the Government is right that a chip

6    is a firearm, for purposes of some subsections of the

7    guideline such as Section 2K2.1(a)(3) (A)(ii) which defines

8    "firearm" by reference to what, quote, is described in Title

9    26, United States Code, §5845(a), Section 2K2.1(b)(6)(B) does

10   not use the same, quote, is described in Title 26, United

11   States Code, § 5845(a) language or even analogous language.

12         It states instead, "If the defendant used or

13   possessed any firearm in connection with another felony

14   offense, increase by four levels."

15         "To be sure, Application Note One's seeming

16   restriction on the scope of the guideline provision to only

17   certain firearms that must give way if that restriction is in

18   conflict with §2K2.1(b)(6)(B).  They cite the *Walker* case."

19         "Title 18, §921(a)(3) refers to multiple types of

20   firearms rather than a single type.  Thus, the words "any

21   firearm" in Section §2K2.1(b)(6)(B) do not necessarily

22   conflict with the restrictions set forth in the note about

23   the types of firearms encompassed by the provisions of the

24   guidelines, as those words reasonably be understood to be

25   describing merely any firearm that is described in Title 18,

1    United States Code §921(a)(3).

2            "As a result, the phrase "any firearm" in Section

3    §2K2.1(b)(6)(B) though expansive, reasonably may be

4    understood not to be so expansive as to include even a device

5    that §921(a)(3) does not deem to be a firearm at all.  And as

6    we have explained, the Government does not dispute that

7    §921(a)(3) excludes a chip from its definition of a firearm."

8            Like you said, I think this is a matter for the

9    Sentencing Commission to clear up.  I don't even have to get

10   into it is what I'm saying.

11           **MR. CONNER:**  I agree as far as that textual

12   provision that you do not have to make a determination, the

13   effect of the First Circuit case is that this Court should

14   not.

15           **THE COURT:**  That's what I said in the first place.

16           **MR. CONNER:**  Okay, but my point is I'm not making

17   the same argument I did at that point.  I am making the

18   argument that, in light of the aggravating factors --

19           **THE COURT:**  I understand that argument.  I

20   understand that argument.

21           **MR. CONNER:**  That's all for the Government.

22           **MR. SANTOS:**  Your Honor, may I address some brief

23   points?

24           **THE COURT:**  Of course.

25           **MR. SANTOS:**  The Government said that it's not bound

1    to put forth before because there was a straight plea.  The

2    Government's prior words, the representation to the Court to

3    bind them.  They argued at the initial sentencing hearing for

4    a mid range sentence.  Now they are arguing for a 25 month

5    upward variance.  That number of 66 months was not picked out

6    by the Government initially at random.  They chose it based

7    on the guidelines which is the starting point.

8            Now they are saying that although the higher end of

9    the guidelines had been lowered 31 months, it still would

10   pick out that number.  Those prior representations bind the

11   Government in what they believe what would be the appropriate

12   sentence at that point.

13           **THE COURT:**  What you're saying -- what was the

14   previous guideline, 37 to 46?

15           **MR. SANTOS:**  57 to 71.  So it was a guideline

16   sentence when they argued it initially.  Sixty-six months, it

17   was at the mid range.  Now they are saying the guidelines

18   have been lowered.  Forget about them.  You can still do the

19   same sentence anyways.  That number they initially picked was

20   not at random.  It was based on the guideline range

21   application at the time.  So those prior representations do

22   bind them.

23           **THE COURT:**  Do they, Mr. Conner?

24           **MR. CONNER:**  We don't believe so, Your Honor,

25   because there was an understanding that we had found out from

```
 1    the First Circuit was wrong, that the guidelines were higher
 2    initially and we felt at the time that represented an
 3    appropriate sentence, so that was our recommendation.
 4           THE COURT:  Based on that guideline.
 5           MR. CONNER:  Based on the totality of the factors
 6    that we considered including the defendant's history and the
 7    instant offense.  We decided based on the same aggravating
 8    circumstances that we would make the same recommendation we
 9    did the first time.
10           THE COURT:  So what Mr. Santos is saying is that
11    because you argued the middle of the guideline range
12    originally, that you should make that argument now.
13           I guess that's what you are trying say, Mr. Santos.
14    You are holding the Government to what it argued at the first
15    sentence.
16           MR. SANTOS:  That's correct, Your Honor.  They
17    should be held accountable for what they said at the initial
18    sentence which was a mid range sentence, and now it's a
19    25-month variance, which I don't think in any eyes, that
20    would be a modest variance.
21           THE COURT:  All right.
22           MR. SANTOS:  Your Honor, the second amendment cases
23    that I brought up in my memorandum was not as a matter of a
24    motion to dismiss but the statement that machineguns are
25    dangerous and unusual weapons, it comes in the context of the
```

1    second amendment case.  It was the *Heller* case which was

2    later cited by a Ninth Circuit case, I believe.

3         **THE COURT:**  It is a Ninth Circuit case.

4         **MR. SANTOS:**  Yes, that makes reference to *Heller*.  I

5    am expanding upon that in light of the *Bruen* Supreme Court's

6    decision, and further decisions that have come down by

7    District Courts and Circuit Courts since then talking about

8    what is an unusual weapon.  Many of them have concluded that

9    machineguns are not unusual weapons.  So that is the point of

10   those cases.  Not as a matter of a motion to dismiss but to

11   show that that statement has been disagreed with and

12   explained and expanded upon since those cases came out.

13        **THE COURT:**  By any other circuit?

14        **MR. SANTOS:**  Well, Your Honor, I have cited these

15   cases in my sentencing memorandum.

16        **THE COURT:**  Because I just learned of this Circuit's

17   (unintelligible) case which says that §922(o) is

18   unconstitutional.

19        **MR. SANTOS:**  §922(o), yes, Your Honor, and dismissed

20   the indictment.  That was last week.  One of the indications

21   that they made, because I'm not making the request right now

22   that § 922(o) is not constitutional and, therefore, this case

23   should be dismissed but that machineguns are not --

24        **THE COURT:**  I am waiting for your office to do it.

25        **MR. SANTOS:**  We probably will soon enough, Your

1  Honor.

2        The argument that I am making in this case that

3  machineguns are not unusual and, therefore, should not

4  warrant treatment that is --

5        **THE COURT:**  I think they are.

6        **MR. SANTOS:**  I have heard it before, Your Honor.  I

7  am just trying to put forth more cases to dissuade that

8  notion by the Court.

9        **THE COURT:**  I think the Supreme Court has made a

10  mess of this issue with the *Bruen* and *Rahimi* cases.

11        **MR. SANTOS:**  That may be true, Your Honor, as far as

12  the Court understands it, but again, these pronouncements by

13  the Court have to be looked at by this Court in analyzing

14  these situations.

15        I think that the 2K2. guideline has existed with the

16  same or similar language for over 20 years and the

17  Government's sentencing memorandum at docket 28, which was

18  the initial sentencing memorandum, included a U.S. patent for

19  the Glock chips.  I think it's 28-1.  There, it shows that

20  the patent for that Glock chip was filed in 1996 and approved

21  in 1998.  That is over 26 years ago that these type of

22  devices have been in existence in the market.

23        The Commission has been aware of their existence of

24  Glock chips for many years now.  They have declined to

25  include them as part of the definition of firearm that the

```
 1  Court indicated.

 2          THE COURT:  Well, like Mr. Conner said, it's a mess

 3  over there.  They don't know what to do.

 4          MR. SANTOS:  What do you mean, Your Honor?

 5          THE COURT:  The Supreme Court has to decide that

 6  issue.

 7          MR. SANTOS:  That machineguns are unusual?

 8          THE COURT:  No, the argument that Mr. Conner made

 9  and which I just read in the First Circuit opinion.  I think

10  that if I don't get into the four-level enhancement, I don't

11  have to deal with it.  Let the Commission deal with it.  They

12  are the supposed experts.

13          It's not going to happen before I retire.  I'm not

14  surprised if they eventually get rid of the Sentencing

15  Guidelines.  It's a gratuitous comment on my part.

16          MR. SANTOS:  I will just restate my recommendation.

17          THE COURT:  Mr. Nieves, would you like to say

18  anything.

19          THE DEFENDANT:  No, sir.

20          THE COURT:  On March 11, 2021, the defendant,

21  Heclouis Joel Nieves-Diaz, plead guilty to Counts 1, 2 and 3

22  of the indictment in Criminal Case Number 20-353.

23          Count 1 charges Mr. Nieves with being a prohibited

24  person, a convicted felon, in possession of ammunition in

25  violation of Title 18 U.S.C. § 922(g)(1) and 924(a)(2).
```

1          Count 2 charges him with illegal possession of a

2    machinegun, a part designed and intended solely and

3    exclusively for use in converting a semi-automatic weapon

4    into a machinegun in violation of Title 18, U.S.C. 922(o) and

5    924(a)(2).

6          Count 3 charges him with possession with intent to

7    distribute cocaine in violation of Title 21, United States

8    Code, Sections 841(a)(1) and 841(b)(1)(C).  All three counts

9    are Class C felonies.

10         On April 18, 2024, the United States Court of

11   Appeals vacated Mr. Nieves' sentence and remanded the case

12   for further proceedings consistent with this opinion which

13   this Court has reviewed.

14         Mr. Nieves appears before the Court today for

15   resentencing.  The Court has reviewed the second amended

16   Presentence Investigation Report filed on July 19, 2024, at

17   docket 48, as well as the adjusted advisory guideline

18   calculations and amended criminal history category finding

19   that they have been applied correctly.

20         The November 1, 2023 edition of the Sentencing

21   Guidelines manual has been used to calculate the guideline

22   adjustments pursuant to the provisions of Guideline Section

23   1B1.11(a).

24         In addition to reviewing the second amended PSR, the

25   adjusted guideline calculations and the amended criminal

1  history category, and the Court of Appeals' opinion; the

2  Court has reviewed the sentencing memoranda filed, arguments

3  by counsel and the prosecutor, and I want to congratulate

4  both Mr. Conner and you, Mr. Santos, on your arguments today.

5       Counts 1, 2 and 3 were grouped together for

6  guideline calculation purposes because one of the counts

7  embodies conduct that is treated as a specific offense

8  characteristic in or other adjustment to the guideline

9  application to one of the counts pursuant to Sentencing

10  Guideline Section 3D1.2(c).

11       The count that yielded the highest offense level was

12  used pursuant to 3D1.3(a) which, in this case, is Count 2.

13       Based on a total offense level of 19 and a criminal

14  history category of two, the guideline imprisonment range for

15  Mr. Nieves' offense is from 33 to 41 months.

16       There is a fine range of $10,000 to $1 million plus

17  a supervised release term of from 1 to 3 years as to Counts 1

18  and 2 and at least three years as to Count 3.

19       Today, Mr. Nieves has requested a sentence of 33

20  months.  The Government has requested a sentence of 66

21  months.

22       In light of the following cases:

23       *United States v. Jean Carlos Polaco-Hance*, Court of

24  Appeals Case Number 21-1982.

25       *United States v. Morales-Negron,* 974 F.3d 63.

| | |
|---|---|
| 1 | *United States v. Diaz-Lugo,* 963 F.3d, 145. |
| 2 | *United States v. Contreras*, 913 F.3d, 232. |
| 3 | *United States v. Bruno Campos*, 978 F.3d, 801. |
| 4 | However, the Court has considered the following: |
| 5 | When Mr. Nieves committed this offense, he |

When Mr. Nieves committed this offense, he
demonstrated a pattern of conduct which is representative of
a lack of regard for the law and mandates that this Court
impose a sentence above the guideline range.

While serving a term of supervised release before
this Court and after having been previously revoked on two
previous occasions, a search was conducted by the Puerto Rico
Police Department, Metropolitan Narcotics Division of
Bayamon, law enforcement agents seized the following items:

Approximately 149 rounds of .223 caliber ammunition
inside a clear plastic Ziploc bag, located on top of the
kitchen's counter.

Approximately 849 small clear plastic baggies
containing suspected cocaine and which field tested positive
for cocaine.

One small plastic cup containing suspected marijuana
which field tested positive to marijuana, located inside the
closet of the main bedroom where Mr. Nieves was located.

One machinegun conversion device located in
Mr. Nieves' bedroom on top of a blue-colored plastic
container.

```
1              One small plastic baggy containing suspected

2    marijuana which also field tested positive to marijuana,

3    located in Mr. Nieves' bedroom, on top of a blue-colored

4    plastic container.

5              According to the chemical analysis report, the

6    cocaine had a net weight of 167 grams.

7              The Court finds that an upward variance in this case

8    is warranted because of Mr. Nieves' criminal history, the

9    large quantity of ammunition he possessed and the credulous

10   of gun violence in the community where Mr. Nieves committed

11   his offense.

12             Mr. Nieves' prior offenses involved both the selling

13   and the possession of firearms.

14             Mr. Nieves has been incarcerated twice for

15   supervised release violations, and his release from his most

16   recent term of incarceration was mere months before he

17   committed his latest offense.

18             These facts demonstrate a troubling pattern and

19   indicate that he has not learned from his previous sentences

20   and show that the possibility of recidivism in Mr. Nieves'

21   case is unreasonably high.  His criminal history and the

22   speed with which he reoffends, therefore, weigh in favor of

23   an upward variance.

24             The nature and circumstances of Mr. Nieves' current

25   offense also weigh in favor of a stiffer sentence.
```

1          Mr. Nieves was not merely found in an apartment

2    where the ammunition and drugs were located.  The apartment

3    in question was a drug trafficking point where the police had

4    observed him engaging in drug sales.

5          Furthermore, the guideline range does not take into

6    account the amount of ammunition that Mr. Nieves possessed,

7    specifically 149 rounds of .223 caliber ammunition, for an

8    assault rifle pursuant to the following cases:

9          *United States vs. Polaco-Hance* 103 F.4th, 95 and

10   *United States v. Gonzalez-Flores*, 988 F.3d 100, a Sentencing

11   Court may consider the quantity of ammunition when

12   determining an appropriate sentence especially, as in this

13   case, the guidelines do not account for the amount of

14   ammunition --

15         Finally, the prevalence of gun violence in the

16   community when Mr. Nieves committed his offense also weighs

17   in favor of additional deterrence.

18         In *United States v. Gonzalez-Flores*, the First

19   Circuit Court of Appeals allowed a District Court to factor

20   in violence in the community at sentencing when there are

21   other aggravating factors or circumstances specific to the

22   defendant.

23         Mr. Nieves' criminal history shows a pattern of drug

24   trafficking and weapons offenses in a city already plagued by

25   violence.

```
 1              In 2019, the year prior to Mr. Nieves' offense,
 2   Puerto Rico was ranked among the deadliest jurisdictions in
 3   the United States with a homicide rate of 19 homicides for
 4   every 100,000 residents.  You can also compare that to the
 5   homicide rate in the other states in the First Circuit which
 6   are not more than two or three homicides for every 100,000
 7   residents.
 8              Because Mr. Nieves committed an offense from a
 9   community already suffering from higher rates of gun
10   violence, a higher sentence is warranted to provide
11   additional deterrence.
12              For this reasons, the Court finds that an upwardly
13   variant sentence, reflects the seriousness of Mr. Nieves'
14   offense, promotes respect for the law, protects the public
15   from additional crimes by Mr. Nieves and addresses the issues
16   of deterrence and punishment.
17              Accordingly, it is the judgment of the Court that
18   Heclouis Joel Nieves-Diaz is committed to the custody of the
19   United States Bureau of Prisons to be imprisoned for a term
20   of 66 months for each count to be served concurrently with
21   each other, but consecutively to the revocation of supervised
22   release sentence in Criminal Number 12-426 which was affirmed
23   by the Court of Appeals.
24              The judgment entered on June 22, 2021 stands as to
25   all other matters to include the terms and conditions of
```

1    supervised release that were imposed.

2          Mr. Nieves, you may appeal this sentence.  You have

3    14 days from the date that the judgment is entered to appeal.

4    Because you are represented by Court-appointed counsel, he

5    will continue to represent you through any appeal.

6          Anything else?

7          **MR. SANTOS:**  Yes, Your Honor.  We would object to

8    the sentence imposed by the Court as both procedurally and

9    substantively unreasonable.

10          First of all, Your Honor, the initial Sentencing

11    Hearing the Court imposed was a 13-month variance from the

12    guidelines.  Now, the Court is imposing a 25-month upward

13    variance considering the same information that was available

14    to the Court at the sentencing hearing and similar arguments

15    made by the Government.  There is no reasonable explanation

16    why the Court would now almost double the amount of the

17    variance considering that the guidelines and his criminal

18    history was lowered and now other the factors the Court

19    considered that could have been considered aggravating are no

20    longer being considered by the Court, still, it almost

21    doubles the amount of the variance.  That is my summation,

22    unreasonable.

23          Secondly, the cases cited at footnote 13 of the

24    second amended PSR, at docket number 48, as I indicated in my

25    resentencing memorandum, Your Honor, all of those cases

 1  involved defendants with fully functioning firearms that was

 2  modified to shoot as machineguns that had additional

 3  magazines and ammunition.

 4          My client was found in possession of one chip and a

 5  bag of ammunition that was loose, found in another part of

 6  the house on top of a kitchen cabinet, and those ammunitions

 7  could not be used in conjunction with the chip.

 8          Those cases are the clearly distinguishable because

 9  considering that amount of ammunition is that it could be

10  used in conjunction with the firearm that the defendant is

11  actually convicted of possessing and that ammunition could

12  create a higher danger situation because you have ready to be

13  used ammo in conjunction with a firearm.  Here, that is not

14  the case.

15          That ammunition cannot be used in conjunction with

16  the chip.  There is no firearm present.  The factors that

17  there is no gun but he is still convicted of a 922(o).  The

18  same base offense level is imposed.  That should be

19  considered for a lower sentence, not a higher sentence.  Yet,

20  the large amount of ammunition, these statements are still

21  being considered in a vacuum, not relative to the context of

22  these cases vis-a-vis Mr. Nieves' case and it is being

23  applied even though the situation is vastly different and

24  there is no gun in this situation.  So the principals for

25  applying these so-called aggravating factors are not at play

1  here.

2          **THE COURT:**  I didn't apply any aggravating factor.

3          **MR. SANTOS:**  Yes, Your Honor, you considered --

4          **THE COURT:**  I am talking about the four levels, that

5  was not applied.

6          **MR. SANTOS:**  I'm not saying that.  The Court

7  considered the amount of ammunition as an aggravating

8  factors.  Those cases are rooted in the fact that --

9          **THE COURT:**  You are focusing on the amount of

10  ammunition.  It's not just the amount of ammunition.  It's

11  his prior criminal record.

12          **MR. SANTOS:**  I'm going through the motions.  I am

13  addressing one by one, so I'm starting with that.  I will get

14  to the others, Your Honor, but the large amount of ammunition

15  that the Court considered and it is part of the PSR, so that

16  is why I am addressing it first which I objected to in my

17  resentencing memorandum.  These cases are not about chips

18  alone.  The fact that this is a different situation where

19  it's a chip alone, and I said it repeatedly, yes, it is

20  sufficient to meet the definition under 922(o) of what is a

21  machinegun so he is convicted of it, obviously.

22          For purpose of determining the sentence, the Court

23  has to look at the facts of the case, not just blindly look

24  at the fact that it meets the definition of a machinegun and

25  apply the same concerns as if he had an AR15 or a modified

```
1    Glock.  This is not the same situation so it shouldn't

2    warrant the same punishment.  I think that looking at the

3    facts of the case is what the Court is called to do at the

4    sentencing hearing.

5          The fact that he has a criminal history, yes, he has

6    one prior conviction.  I understand he has been in prison

7    three times, but the two other times were for violating

8    conditions of supervised release that were technical

9    violations; using drugs, not reporting to the Probation

10   Officer.  I don't say that is excusable behavior but I'm

11   saying that there are degrees in the way that you assess his

12   so-called criminal history.  Those revocations, he has served

13   time for those and they have already been addressed at the

14   higher end sentence that the Court imposed of 18 months.

15         To say that he has a lengthy criminal history, when

16   he has one prior conviction from 12 years ago, eight years

17   before his prior case, it's not, in my estimation, a fair

18   assessment of his criminal history because the other two

19   incarcerations which were short stints in jail were for

20   technical violations, not for new offenses.

21         So that taken into consideration and in combination

22   with his sentence on the revocation should not warrant a

23   higher sentence let alone a 25-month variance which is,

24   again, almost double the original variance that was imposed.

25         Just because it's a lower number doesn't mean it's
```

1    not worse because it's still double the amount of the

2    variance that was originally imposed.

3        Again, the community's concerns with violence, my

4    client has no history of violence.  He has a prior conviction

5    for an 841 offense.  Yes, I know the plea agreement says that

6    he admitted that he possessed firearms in connection with

7    that 841 conviction, and it's in the PSR.  There is no

8    history of violence against my client.  The Court is citing

9    statistics of homicide, which is a violent crime, that has

10   nothing to do with my client or nothing to do with his

11   history.  We would challenge these statistics as unreliable

12   and irrelevant to Mr. Nieves' case.

13       **THE COURT:**  That's not what the First Circuit has

14   said.  The First Circuit has said that I can consider that in

15   conjunction with a defendant's specifics and that's what I

16   have done.

17       **MR. SANTOS:**  Well, Your Honor, I don't agree that is

18   what the Court has done.  The *Gonzalez* decision is a case

19   that I litigated in front of Your Honor, and the Court is

20   aware of that, there was a split and the Court couldn't come

21   to a decision of how to assess the community concerns.  There

22   was a split.  Three of the judges that decided in favor of

23   the defendant, three would have overturned several cases.

24   The result was there was no decision, so that, by operation

25   of law, then the Government prevailed in the affirmance of

1    the sentence.

2          I don't think, especially now, that necessarily

3    would be the case and, with new judges in the Court, we will

4    see how this is resolved in the future.

5          Regardless of that, these community concerns are not

6    applicable to Mr. Nieves because, again, he only has a prior

7    841 conviction for being a drug seller.  It doesn't have

8    anything to do with violence, anything to do with homicide.

9    He was never found in possession of a firearm in his history.

10          I would just think that the sentence that should

11    have been imposed in this case would have been a guideline

12    sentence particularly because of the fact that no gun was at

13    play in this case and the Court is, in my estimation,

14    creating a disparity.

15          The most similarly situated defendant that I could

16    find which was sentenced by this Court was United States v.

17    Eddy (unintelligible) in the case that I cited 23-194 where,

18    again, he had a chip.  There were conversations in his phone

19    about sales of firearms, photographs of firearms.  I think

20    there was a photograph of him holding a firearm.  This Court

21    sentenced him and found that he was in possession of a chip,

22    applied the same base offense level, same total offense

23    level, he had a higher criminal history, the Court still

24    sentenced him to a lower end sentence within the guidelines

25    and he was also under supervised release.

1          But for Mr. Nieves, it is a 25-month upward

2    variance.

3          I don't really understand the difference in what the

4    Court called the troubling pattern that Mr. Nieves engaged in

5    as opposed to other defendants with similar or worse criminal

6    histories that would warrant that he be sentenced above the

7    guidelines.

8          I would just challenge the statistics that the Court

9    is relying on and I have no information the Court would rely

10   on specific statistics to pronounce this sentence so I would

11   have to look at them before I am able to specifically rebut

12   these numbers that the Court has relied on to consider the

13   sentence to be imposed.

14        **THE COURT:**  Mr. Conner.

15        **MR. CONNER:**  If I could just make two clarifications

16   that I believe I am obligated to make for the Court.

17        The first is I believe I heard, and maybe I

18   misheard, when you were describing his previous offense you

19   indicated that he both possessed and sold firearms.  I want

20   to clarify that I believe the case that he was a seller for a

21   drug organization and possessed firearms but not that the

22   firearms he possessed he had also sold.

23        **THE COURT:**  That is a typographical error or an

24   error in drafting.  I agree with you.

25        **MR. CONNER:**  The other point of clarification, there

1   is a recent decision by the First Circuit that when you

2   factor under community based factors that the best comparison

3   is to national averages and not jurisdictions in the First

4   Circuit.  As much as that might not be a major difference

5   because the other jurisdictions are much closer to the

6   national average, I believe what the Court was saying is that

7   this Court should avoid just a comparison to the First

8   Circuit.

9        **THE COURT:**  That's why I said national and then I

10  mentioned the First Circuit.

11       **MR. CONNER:**  Okay, based on recent decisions, they

12  seem to discourage the comparison.

13       **THE COURT:**  I know.  I don't think they're right but

14  I will go on with it.

15       **MR. CONNER:**  One more point, my friend on the other

16  side mentioned that he did not have a chance to sufficiently

17  refer to the statistics that you referred to and I filed my

18  sentencing memorandum, over a month ago, that included those

19  statistics.  So with all due respect, I believe that is

20  plenty of time if he wanted to challenge our statistics.

21       That is all from the Government.

22       **THE COURT:**  I have listened to your argument, Mr.

23  Santos, about the reasonableness of the sentence.  I disagree

24  with you for those reasons I indicated when I imposed

25  sentence.

```
 1              Where has Mr. Nieves been incarcerated?

 2         MR. SANTOS:  He was in Williamsburg at some point

 3    and then transferred to some other prison, then he was

 4    brought here because there was a delay in his flight so he

 5    was stuck in Miami.  He arrived here on July 26.

 6         THE COURT:  Where would he like to go?

 7         MR. SANTOS:  I believe he would request a

 8    designation at Williamsburg which was where he was

 9    previously.

10         THE COURT:  Where is that?

11         THE DEFENDANT:  South Carolina.

12         THE COURT:  I recommend that Mr. Nieves be

13    designated again to Williamsburg Institution in South

14    Carolina, that he take any vocational training available at

15    the Institution.

16         Mr. Nieves, do you have a high school degree?

17         THE DEFENDANT:  Yes.

18         THE COURT:  How well do you speak English?

19         THE DEFENDANT:  I speak English now.

20         THE COURT:  Usually I require, as part of your

21    incarceration, that you take courses in English as a second

22    language.  If you feel that you are qualified enough in

23    English and you don't have to take these courses, you may

24    want to volunteer to teach others to speak English, all

25    right.
```

1          **THE DEFENDANT:**  Yes, sir.

2          **THE COURT:**  Anything else?

3          **MR. SANTOS:**  Nothing else.

4          **THE COURT:**  You are excused.

5          Mr. Conner?

6          **MR. CONNER:**  Nothing else, Your Honor.

7          **THE COURT:**  Have a nice day.

8          (Whereupon, proceedings conclude at 10:27 a.m.)

1    UNITED STATES DISTRICT COURT )
     DISTRICT  OF   PUERTO RICO )
2

3                        REPORTER'S CERTIFICATE

4

5              I, Robin Marie Dispenzieri, Official Court Reporter

6    for the United States District Court for the District of

7    Puerto Rico, appointed pursuant to the provisions of Title

8    28, United States Code, Section 753, do hereby certify that

9    the foregoing is a true and correct computer-aided transcript

10   of proceedings had in the numbered cause on the date herein

11   set forth; and I do further certify that the foregoing

12   transcript has been prepared by me or under my direction.

13

14             Dated this 5th day of February 2022.

15

16

17

18             /s/ Robin Marie Dispenzieri

19             _____
               Robin Marie Dispenzieri, RPR, OCR
20             Official Court Reporter
               United States District Court
               **District of Puerto Rico**
21             150 Av. Carlos E. Chardón
               San Juan, Puerto Rico  00918
22

23

24

25

Robin Marie Dispenzieri, Official Court Reporter
United States District Court of Puerto Rico

AD46